IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

              Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

              Defendants.

NO. C03-3174 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS CLAIMS FROM FOURTH AMENDED COMPLAINT

       This matter comes before the Court on Defendants' motion to dismiss claims from Plaintiffs' fourth amended complaint ("FAC"). After carefully reviewing the parties' written arguments, the allegations in the FAC, and relevant law, the Court found this motion suitable for decision without oral argument and therefore cancelled the motion hearing scheduled for Monday, September 26, 2005. For the reasons discussed below, the Court now GRANTS IN PART and DENIES IN PART Defendants' motion.

**BACKGROUND**

       Plaintiffs filed their initial complaint on July 9, 2003. On October 29, 2003, Plaintiffs filed their first amended complaint as of right under Federal Rule of Civil Procedure 15(a), which allows one amendment "at any time before a responsive pleading is served." Defendants moved to dismiss the first amended complaint, and the Court granted in part and denied in part Defendants' motion on February 25, 2004. Plaintiffs timely filed their second amended complaint on March 24, 2004. Defendants moved to dismiss the conspiracy cause of action from the second amended complaint, and the Court granted that motion, which Plaintiffs did not oppose, on June 15, 2004. Defendants answered the second amended complaint on July 16, 2004.

Ordinarily, Defendants' filing of an answer would have moved this case beyond the pleadings stage. However, Plaintiffs subsequently moved for leave to file a third amended complaint. The Court granted in part and denied in part Plaintiffs' motion on January 4, 2005, and Plaintiffs timely filed their third amended complaint on January 16, 2005. Defendants moved to dismiss the third amended complaint, and Plaintiffs moved for leave to file a fourth amended complaint. On May 6, 2005, the Court ruled on both motions by dismissing portions of the third amended complaint and granting Plaintiffs leave to file a fourth amended complaint.

The Court ordered the parties to meet and confer prior to the filing of Plaintiffs' fourth amended complaint to encourage the parties to discuss all of Defendants' objections to the proposed amendments. The Court hoped to avoid the need for yet another motion to dismiss, but the parties were unable to reach agreement. Instead, Plaintiffs filed their fourth amended complaint on July 5, 2005, after having failed to obtain Defendants' agreement that the latest version of the complaint would survive scrutiny under Federal Rule of Civil Procedure 12(b)(6). Defendants now move to dismiss all but Plaintiffs' first cause of action, which is for gender discrimination under Title VII raised by the proposed class against Defendant California Department of Corrections (now the Department of Corrections and Rehabilitation). In particular, Defendants now seek dismissal of the individual equal protection claims brought by Plaintiffs Berndt, Hastings, Longo, Scott, and Moreira; the First Amendment retaliation claims brought by Plaintiffs Longo and Scott; and a mixed race-gender discrimination claim brought by Plaintiff Curry. The Court addresses each set of claims in turn below.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

2

1  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Moreover, dismissal should be with leave to
2  amend unless it is clear that amendment could not possibly cure the complaint's deficiencies.
3  *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir. 1998).

4  In deciding whether a case should be dismissed, a court may generally only consider
5  the complaint and any attached exhibits that have been incorporated therein. *Lee v. City of*
6  *Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, the court may consider a
7  document external to the complaint if the complaint "necessarily relies" on the document and
8  no party contests the document's authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706
9  (9th Cir. 1998). The court may also consider facts for which judicial notice is appropriate.
10 *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Thus, while the court must generally
11 accept as true the factual allegations of the complaint and construe those allegations in the
12 light most favorable to the plaintiff, the court need not "accept as true allegations that
13 contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State*
14 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001).
15 "Nor is the court required to accept as true allegations that are merely conclusory,
16 unwarranted deductions of fact, or unreasonable inferences." *Id.*

17

18 **DISCUSSION**
19 **I. Equal Protection Claims**
20 As Plaintiffs acknowledge, to prevail on their equal protection claims, they must show
21 that discriminatory intent was a "motivating factor" in Defendants' actions. *E.g., Village of*
22 *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). Failure to
23 allege discriminatory animus subjects an equal protection claim to dismissal. *Lee*, 250 F.3d
24 at 687 (dismissing plaintiffs' equal protection claim because "[p]laintiffs failed to allege that
25 defendants' acts or omissions were motivated by discriminatory animus toward the mentally
26 disabled as a protected class"). This Court granted Defendants' motion to dismiss the third
27 amended complaint because Plaintiffs failed to meet that standard.
28

3

The FAC, however, now contains allegations that each defendant was motivated in part by "Plaintiffs' status as women." *E.g.,* FAC ¶ 65. Although conclusory, such allegations are sufficient to satisfy federal notice-pleading standards.[1] Taken as a whole, the FAC alleges that Defendants knew that inmates targeted female employees, such as Plaintiffs, for sexual harassment; that Defendants had the power to do something about it; but that Defendants failed to do anything, in part because of their discriminatory animus towards women. Thus, the Court does not find persuasive Defendants' argument that the equal protection claims must be dismissed for failure to allege discriminatory animus.

The Court also rejects Defendants' argument that there can be no equal protection claim in this case because Plaintiffs fail to allege that there are similarly situated male employees who were treated any differently than Plaintiffs. Defendants essentially contend that there could only be an equal protection violation if Plaintiffs were able to show that complaints of sexual harassment by male employees were treated differently than complaints by female employees. However, even if no males complained of sexual harassment, and only females complained about sexually harassing comments directed towards women, that does not mean there can be no equal protection violation. The point is that the harassing behavior was based on gender, and Defendants' failure to address the behavior was also motivated in part by discriminatory animus based on gender. Given these allegations, the Court simply cannot say, at this stage of the proceedings, that Plaintiffs will be unable to prove any facts that may give rise to an equal protection claim.[2]

Next, the Court has already rejected in part Defendants' argument that the complaint fails to allege a sufficient connection between Defendants Schwartz and McGrath and the plaintiffs who assert equal protection claims against them. *See* May 6, 2005 Order at 7 ("As a matter of guidance to Plaintiffs, the Court would find the allegations in the proposed FAC

---

[1] In *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123-26 (9th Cir. 2002), the Ninth Circuit overruled its prior decisions that required heightened pleading of constitutional tort claims involving improper motive or intent.

[2] Of course, as is the case with all rulings on a motion to dismiss, the Court's finding that a claim is sufficient to avoid dismissal indicates nothing about Plaintiffs' likelihood of prevailing on the merits.

4

1  sufficient for Plaintiff Moreira to state a claim against Defendant Schwartz, assuming that
2  discriminatory intent were sufficiently alleged.  The Court would also find the allegations
3  sufficient for Plaintiffs Berndt, Hastings, Longo, and Scott to state a claim against Defendant
4  McGrath. . . .").  In addition, Plaintiffs allege in the FAC that McGrath and Schwartz held
5  high-level managerial positions at the facilities at which Plaintiffs worked and that, by nature
6  of those positions, McGrath and Schwartz had the authority and responsibility to address the
7  problem of exhibitionist masturbation at those facilities.[3]  This is sufficient to survive a
8  motion to dismiss, and Defendants cite no authority for their proposition that Defendants
9  must have had direct contact with or direct supervisory responsibility over Plaintiffs before
10 they can be held liable for an equal protection violation.

11       Finally, Defendants argue that, even if Plaintiffs have stated equal protection claims,
12 those claims should be dismissed on qualified immunity grounds.  Under the doctrine of
13 qualified immunity, government officials performing discretionary functions "are shielded
14 from liability for civil damages insofar as their conduct does not violate clearly established
15 statutory or constitutional rights of which a reasonable person would have known."  *Harlow*
16 *v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has held that "the requisites of
17 a qualified immunity defense must be considered in the proper sequence."  *Saucier v. Katz*,
18 533 U.S. 194, 200 (2001).  A court considering assertions of qualified immunity must first
19 determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . .
20 the facts alleged show the [defendants'] conduct violated a constitutional right."  *Id.* at 201.
21 If a plaintiff cannot show that he or she suffered a constitutional violation, there is no need to
22 continue the qualified immunity analysis.  However, if the allegations are sufficient to
23 demonstrate a violation of a federally protected right, then the court must ascertain "whether
24 the right was clearly established."  *Id.*  This evaluation requires the court to determine
25 "whether it would be so clear to a reasonable officer that his conduct was unlawful in the

---

26  [3]Plaintiffs allege that Defendant Schwartz was an associate warden and then chief
27  deputy warden at Pelican Bay State Prison, the workplace of Plaintiffs Berndt, Hastings, Longo, and Scott, and that Defendant Schwartz subsequently served as acting warden and then warden at California Medical Facility-Vacaville, the workplace of Defendant Moreira.
28  Plaintiffs also allege that Defendant McGrath served as acting warden at Pelican Bay.

5

1  situation he confronted." *Id.* at 202. A defendant is therefore entitled to qualified immunity
2  if he or she makes a reasonable "mistake as to what the law requires." *Id.* at 205.

3        In their moving papers, Defendants based their qualified immunity argument on their
4  assertion that Plaintiffs failed to allege discriminatory intent or motive. As discussed above,
5  the Court finds that the FAC sufficiently alleges that Defendants' actions were motivated in
6  part by discriminatory animus, and Defendants' qualified immunity argument on this basis is
7  therefore unpersuasive.

8        In their reply, Defendants raised a new argument: that it was not clearly established
9  that "the equal protection clause applies to inmates' sexual misconduct for which prison
10 officials may be held liable." Reply at 5. Although the Court need not consider this
11 argument because it was raised only on reply, it finds that it would be efficient to address the
12 issue now rather than wait for a successive motion by Defendants. Defendants correctly
13 observe that Plaintiffs have not identified any case law that establishes that a prison official's
14 failure to respond to complaints of inmate misconduct, even if motivated in part by
15 discriminatory animus, violates the Equal Protection Clause. Instead, cases regarding
16 supervisory liability for failure to act have concerned complaints of sexual harassment by co-
17 workers. *E.g.*, *Bator v. Hawaii*, 39 F.3d 1021, 1029 (9th Cir. 1994). However, although the
18 right in question must be considered "in light of the specific context of the case, not as a
19 broad general proposition" for purposes of qualified immunity analysis, *Saucier*, 533 U.S. at
20 201, "[t]his is not to say that an official action is protected by qualified immunity unless the
21 very action in question has previously been held unlawful; but it is to say that in the light of
22 pre-existing law the unlawfulness must be apparent," *Anderson v. Creighton*, 483 U.S. 635,
23 640 (1987) (citation omitted). Thus, for example, in *Bator*, the Ninth Circuit held that,
24 "[e]ven if the contours of a supervisor's responsibility are uncertain, complete inaction in the
25 face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to
26 qualified immunity." *Bator*, 39 F.3d at 1029. The same is true in this case, where Plaintiffs
27 allege that Defendants acted or failed to act in part because of their discriminatory animus
28 towards women. Even if it was unclear exactly what a supervisor confronted with

6

1 complaints of inmate sexual harassment should have done, a reasonable official would have
2 known that he or she could not ignore employee complaints, as Plaintiffs allege, based on the
3 complainants' status as women. Accordingly, for all of the above reasons, Defendants'
4 motion to dismiss Plaintiffs' equal protection claims is DENIED.

**II. First Amendment Retaliation Claims**

The Court summarized the law governing First Amendment retaliation claims in its order granting Defendants' motion to dismiss the third amended complaint and granting Plaintiffs' motion for leave to file a fourth amended complaint:

> To succeed on their First Amendment retaliation claim, Plaintiffs must demonstrate: (1) that they were subject to an adverse employment action; (2) that the speech at issue was constitutionally protected; and (3) that the speech was a "substantial motivating factor" in the adverse employment action. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). A public employee's speech is constitutionally protected if the speech relates to a matter of "public concern" and the employee's interests in making that speech as a concerned citizen outweigh the state's interests in controlling and managing its employees. *Connick v. Myers*, 461 U.S. 138, 143 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The Supreme Court has defined a matter of public concern to be "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Similarly, the Ninth Circuit applies a broad test to determine whether something qualifies as a matter of public concern. *See Roe v. City & County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997) ("[I]t is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested."); *Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992) ("[S]peech focused solely on internal policy and personnel grievances does not implicate the First Amendment," but First Amendment protections are triggered "[i]f some part of the communication addresses an issue of public concern.").

May 6, 2005 Order at 9. The Court dismissed the retaliation claims brought by Plaintiffs Longo and Scott because the third amended complaint alleged only that Longo and Scott filed reports about inmate exhibitionism that personally affected them; there was no allegation that either plaintiff ever spoke more broadly about the alleged hostile work environment at Pelican Bay. As a result, the Court concluded that Plaintiffs' alleged speech was not a matter of public concern and included only personnel grievances.

7

1    Plaintiffs do not argue that the First Amendment protects the contents of the reports
2 they filed of inmate misconduct. Instead, they contend that they have sufficiently alleged
3 that Longo and Scott spoke about "the way in which a hostile work environment was being
4 created by Defendants' failure to respond to complaints of inmate exhibitionism." Opp'n at
5 12. The Court previously stated that this would be sufficient to constitute speech on a matter
6 of public concern. *Id.* at 9-10; *see also Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th
7 Cir. 2004) ("Unlawful conduct by a government employee or illegal activity within a
8 government agency is a matter of public concern.").

9    The allegations as to Plaintiff Scott, however, continue to be insufficient. First,
10 Plaintiffs allege that Scott was retaliated against "after she participated in the Office of the
11 Inspector General's inquiry into allegations of sexual harassment at PBSP based on inmate
12 exhibitionist masturbation." FAC ¶ 77. However, Plaintiffs failed to respond to Defendants
13 argument that the Court cannot consider this incident because the inquiry occurred in 2000,
14 and the statutory period for purposes of this case did not begin until 2002.

15    Second, Plaintiffs allege that Scott was retaliated against "after she refused to censor
16 reports that detailed how inmate exhibitionist masturbation created a sexually hostile
17 environment for her and other similarly situated females." FAC ¶ 78. However, even read in
18 a light most favorable to Plaintiffs, this allegation only states that Scott made detailed reports
19 about specific inmates' behavior directed towards her. This is particularly true when read in
20 conjunction with the only other parts of the FAC that allege that Scott made any reports:
21 Scott allegedly reported an incident of exhibitionist masturbation by inmate McMillan in
22 November 2002; "continued to submit reports about inmate exhibitionist masturbation"; and,
23 in December 2002, she "attempted to report exhibitionist masturbation by inmate Goldwire
24 Jackson." FAC ¶¶ 23-25. All of these allegations concern reports made about inmate
25 behavior and say nothing about Defendants' failure to address complaints about inmate
26 sexual harassment, let alone Defendants' failure to address complaints that did not personally
27 affect Scott. Thus, these reports are more in line with an employee grievance than speech on
28

8

1  a matter of public concern by a concerned citizen, and the Court therefore GRANTS
2  Defendants' motion to dismiss Scott's First Amendment retaliation claim.
3        Plaintiff Longo, however, alleges that she was retaliated against because of her "vocal
4  support of her female coworkers fighting inmate exhibitionist masturbation." FAC ¶ 79.
5  While it may ultimately be true that Longo's speech does not rise to the level of being on a
6  matter of public concern, the Court cannot make that determination without knowing more
7  about the "content, form, and context" of the allegedly protected speech. *Connick*, 461 U.S.
8  at 147-48. At this stage, it remains possible that Plaintiffs could prove facts that would
9  establish that Longo speech was on a matter of public concern, rather than simply on internal
10 personnel grievances.
11       Defendants also assert that Longo's First Amendment claim must fail because she
12 alleges that she "was forced to retire . . . because she refused to administer medication to
13 inmate Goldwire Jackson," FAC ¶ 26, and not because of her allegedly protected speech.
14 However, elsewhere in the FAC, Plaintiffs allege that "Defendants WINSLOW,
15 MCGRATH, and SCHWARTZ were aware of Plaintiff LONGO's vocal support of her
16 female coworkers fighting inmate exhibitionist masturbation, and instigated and approved
17 vindictive Internal Affairs investigations in retaliation." *Id.* ¶ 79. The FAC further alleges
18 that, "[i]n response to Plaintiff LONGO's speech, Defendant MCGRATH intentionally
19 initiated Internal Affairs investigations against Plaintiff LONGO to silence her. Defendant
20 WINSLOW signed and approved multiple adverse actions against Plaintiff LONGO from
21 baseless investigations instigated by Defendant MCGRATH." *Id.* ¶ 81. Being subject to
22 baseless investigations would be "reasonably likely to deter employees from engaging in
23 protected activity," and Longo has therefore sufficiently alleged that she was subject to
24 adverse employment actions. *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000).
25 Defendants do not dispute that the allegations, read in a light most favorable to Plaintiffs,
26 would, if true, establish that Longo's speech was a substantial motivating factor in the
27 allegedly baseless investigations. Thus, the allegations sufficiently state a violation of
28 Plaintiff Longo's First Amendment rights.

9

1    This does not end the Court's inquiry, however. Defendants also argue that they are
2 entitled to qualified immunity, and the Court finds Defendants' position to be persuasive. As
3 discussed in the previous section of this order, a defendant is shielded from liability by
4 qualified immunity if the right in question was not clearly established at the time of the
5 alleged acts or omissions. It was not until 2004 that the Ninth Circuit issued its decision in
6 *Thomas*, which held that speech on a personnel matter not pertaining to the speaker's own
7 job status "is the type of personnel matter that can be constitutionally protected under the
8 public concern test." *Thomas*, 379 F.3d at 808. Prior to that time, the Ninth Circuit had only
9 held that "employment grievances in which the employee is complaining about her *own* job
10 treatment" did not constitute protected speech under the First Amendment. *Id.* Until
11 *Thomas*, a reasonable officer may therefore have assumed that employment grievances, even
12 those relating to other employees' jobs, were not constitutionally protected as speech on
13 matters of public concern. Thus, at the time of the alleged retaliation against Longo, in 2002
14 and early 2003, it was not clearly established that Longo's speech in support of Berndt's and
15 Scott's harassment claims could potentially constitute speech on a matter of public concern.

16    Plaintiffs' opposition offers no authority contrary to Defendants' position. Indeed, the
17 section of Plaintiffs' opposition brief devoted to whether Defendants could "have reasonably
18 believed their conduct was lawful" concerns only Plaintiffs' equal protection claim; it fails to
19 mention Plaintiffs' First Amendment claim at all. *See* Opp'n at 18-19. In an earlier section
20 of their opposition, Plaintiffs do argue that the right of a public employee to speak on matters
21 of public concern is "long-established," going back to the Supreme Court's 1968 decision in
22 *Pickering*. *Id.* at 18. However, Plaintiffs interpret the right too broadly for the qualified
23 immunity analysis, which requires that the right in question be considered "in light of the
24 specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.
25 Even though it was clearly established that a public employee cannot be retaliated against for
26 speaking on a matter of public concern, Plaintiffs have cited no authority for the proposition
27 that it was clearly established that an employment grievance, related to the job status of other
28 employees, could constitute speech on a matter of public concern and therefore fall under the

10

1 protections of the First Amendment. Consequently, Plaintiffs have failed to rebut
2 Defendants' assertion of qualified immunity, and the Court therefore GRANTS Defendants'
3 motion to dismiss Longo's First Amendment retaliation claim. Dismissal is with prejudice
4 because amendment could not cure this deficiency.[4]

### III. Title VII Claim Based on Both Race and Gender

Finally, Defendants move to dismiss Plaintiff Curry's individual Title VII claim.[5] Curry is an African-American female who alleges that she was treated differently because she was both African-American and female. The third amended complaint asserted only a race-based claim by Curry, which the Court dismissed after finding the allegations insufficient to support a claim based solely on race discrimination. However, the Court granted Plaintiffs leave to amend, writing that "Plaintiffs may, for example, be able to allege facts specifically based on race and not gender, or they may convert Curry's individual claim to a 'race plus' or 'sex plus' claim that relies on factual allegations regarding both race and gender." May 6, 2005 Order at 12.

In the FAC, Plaintiff Curry bases her individual Title VII claim on both race and gender. She alleges, for example, that "[t]he only Correctional Officers required to work alone without backup were African-American females." FAC ¶ 87.[6] She also alleges that "non African-American and male Correctional Officers were not endangered in this manner. *Id.* ¶ 86. Essentially, Curry alleges that she is a member of two protected groups and cannot

---

[4]Similarly, even if Scott were given leave to amend the complaint to attempt to add allegations of protected speech, she could not state a claim for relief because Defendants would be entitled to qualified immunity. Thus, Scott's First Amendment claim is also dismissed with prejudice.

[5]Defendants' argument appears on pages 26 and 27 of a brief that, by local rule, was to have been no more than 25 pages. Defendants failed to obtain permission to file an oversized brief, and the Court could therefore decline to consider this argument. However, in the interests of avoiding expending judicial resources on another potential motion to dismiss, the Court addresses Defendants' argument here.

[6]Curry alleges that she was injured when she was left to work alone on the tier.

11

single out race or gender as the cause of the alleged discrimination against her because it was allegedly a combination of both race and gender that led to her disparate treatment.

Defendants argue that the quoted sentence from paragraph 87 is too conclusory to be accepted as true. However, the allegation is not a conclusion; it is a simple factual allegation – that only African-American females were subject to the treatment imposed on Plaintiff Curry. The Court must accept that allegation as true on this motion to dismiss, and Defendants' motion must therefore be DENIED. Curry has sufficiently alleged that she was subject to disparate treatment, resulting in injury, as a result of discrimination based on her status as both a woman and a member of a racial minority group.

**CONCLUSION**

In sum, IT IS HEREBY ORDERED that Defendants' motion to dismiss claims from Plaintiffs' fourth amended complaint is GRANTED IN PART and DENIED IN PART for the above reasons. The motion is GRANTED as to Plaintiffs' First Amendment retaliation claims and DENIED in all other respects. The equal protection claims brought by Plaintiffs Berndt, Hastings, Longo, Scott, and Moreira, as well as the Title VII claim based on both race and gender brought by Plaintiff Curry, are sufficiently alleged to survive Defendants' challenges to the pleadings.

IT IS FURTHER ORDERED that the parties shall appear for a case management conference on **Monday, November 21, 2005, at 1:30 PM**, to discuss how this case will proceed now that all challenges to the pleadings have been resolved and Plaintiffs have been given no further leave to amend their complaint. The parties shall meet and confer and file a joint case management statement on or before **Monday, November 14, 2005.**

**IT IS SO ORDERED.**

DATED   10/13/05

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT