United States District Court
For the Northern District of California

1
2
3                        UNITED STATES DISTRICT COURT
4                       NORTHERN DISTRICT OF CALIFORNIA
5
6
MARTHA BERNDT, et al.,
7
                Plaintiffs,              No. C 03-3174 PJH
8
        v.                              **ORDER DENYING MOTION FOR
9                                        CLASS CERTIFICATION**
CALIFORNIA DEPARTMENT OF
10   CORRECTIONS, et al.,
11              Defendants.
_____/
12
13          Plaintiff's motion for class certification came on for hearing before this court on

14   October 14, 2011.  Plaintiffs, Martha Berndt, Marta Hastings, Sophia Curry, Shelly Adcock,

15   Patricia Moreira, Karen Currie, Lisa R. Boyd, Kimberley Morin, Raisa Jeffries, and the

16   estate of Judy Longo (collectively "plaintiffs"), who represent a putative class of women

17   currently and previously employed at defendant facilities within the relevant time frame,

18   appeared through their counsel, Charles Ralston and Pamela Price.  Defendant California

19   Department of Corrections and Rehabilitation ("CDCR") and individual defendants Teresa

20   Schwartz ("Schwartz"), Joseph McGrath ("McGrath"), David Skerik ("Skerik"), and Dwight

21   Winslow ("Winslow")(all collectively "defendants"), appeared through their counsel, Lyn

22   Harlan, and Kathryn Allen.  Having read the parties' papers and carefully considered their

23   arguments and the relevant legal authority, and good cause appearing, the court hereby

24   DENIES plaintiffs' motion for class certification, for the reasons that follow.

25                              **BACKGROUND**

26          Although this matter was assigned to the undersigned judge on January 28, 2011,

27   this action presents with an extensive procedural background and history that spans the

28   past eight years.  It arises out of allegations that plaintiffs, and other female correctional

United States District Court

For the Northern District of California

1  officers and employees at various institutions run by the CDCR, have been consistently and

2  continuously sexually harassed by inmates at those institutions, and that the CDCR and its

3  responsible officials have failed to take adequate steps in response to such harassment.

4  A.      Background Allegations

5         Plaintiffs are ten current and former correctional officers and employees who

6  work(ed) at various CDCR facilities throughout California.  Plaintiffs allege that beginning

7  as early as November 1989 and up to the present, they and other female correctional

8  officers and employees have been sexually harassed by inmates at various CDCR

9  institutions.  Specifically, plaintiffs allege that on numerous occasions they were subjected

10 to observing inmate exhibitionist behavior ("IEX"), including inmate indecent exposure,

11 masturbation, and ejaculation.  See Fifth Amended Complaint ("FAC"), ¶¶ 18, 24.  Plaintiffs

12 allege that, since 1997, the number of IEX incidents at CDCR facilities exceeds 2,000, and

13 that as of November 1989, at least 500 reports of IEX have been documented at Pelican

14 Bay State Prison ("PBSP") alone.  Id., ¶ 18.  Despite the widespread nature of IEX

15 incidents, plaintiffs generally allege that female CDCR employees were discouraged by

16 supervisors from reporting the incidents, or else declined to report the incidents for fear of

17 retaliation by CDCR administrators.  FAC, ¶ 21.

18        The allegations with respect to each named plaintiff are summarized as follows:

19        1.      Plaintiff Martha Berndt ("Berndt")

20        Berndt began her employment with CDCR as a correctional officer in 1994, and from

21 1995 through July 2002, was continuously assigned to PBSP.  FAC, ¶¶ 2, 24.  From

22 August 2001 through July 12, 2002, Berndt alleges that she was repeatedly sexually

23 harassed by inmate Goldwire Jackson.  See id., ¶ 24.  On July 12, 2002, individual

24 defendant Skerik ordered Berndt to place Jackson in a cell in full view of the control booth,

25 despite Berndt's objections and warning that the inmate would create a hostile and

26 dangerous environment if placed in front of the control both.  FAC, ¶ 24.

27        2.      Plaintiff Marta Hastings ("Hastings")

28

2

Hastings began her employment as a correctional officer with CDCR in 1986, and from 1989 through January 2005, was also continuously assigned to PBSP. FAC, ¶ 3. Plaintiffs allege that in August 2003, Hastings attempted to report an inmate exhibitionist masturbation incident, and she became so emotionally disturbed that she was forced to leave her employment for the day. FAC, ¶ 26. Her complaints were ignored, and two more exhibitionist inmates were placed in her unit. Id. Individual defendants McGrath (a CDCR managing agent) and Schwartz (PBSP associate and chief deputy warden, and subsequent warden at CMF Vacaville) allegedly failed to follow up on Hastings' reports, and/or take action in response thereto. Id.

3.   Plaintiff Judy Kay Longo[1] ("Longo")

Longo began her employment as a medical technical assistant with CDCR in 1990, and she was employed at PBSP from 1992 through February 2003. FAC, ¶ 4. Plaintiffs allege that in February 2003, Longo was forced to retire after a nineteen year career in order to avoid termination, because she refused to administer medication to inmate Jackson. Plaintiffs further allege Longo's prior complaints about Jackson's as well as other inmates' IEX behavior were ignored by her supervisor, individual defendant Winslow (a CDCR managing agent), and that individual defendant McGrath intentionally initiated an internal affairs investigation against Longo, because Longo spoke out against IEX incidents. Id., ¶ 25.

4.   Plaintiff Sophia Curry ("Curry")

Curry was employed by CDCR as a correctional officer in 1987, and was assigned to California State Prison, Sacramento ("CSP Sacramento") during the relevant time frame. See FAC, ¶ 5. On August 28, 2003, while performing her normal duties, Curry came upon an inmate, Owens, naked and masturbating. FAC, ¶ 27. Curry ordered Owens to put on his clothes and report to the office, where Curry counseled Owens regarding his inappropriate behavior. Owens' response was hostile and insubordinate. Id. Following

_____

[1]   Plaintiff Judy Longo is deceased and is accordingly represented by her estate.

3

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  this interaction, Curry wrote a CDCR-115 Rules Violation Report, indicating her belief that

2  Owens was a "threat to all female staff." Notwithstanding Curry's report, plaintiffs allege

3  that Owens was not placed in Administrative Segregation, as CDCR policy and practice

4  required. FAC, ¶ 28.

5       On September 3, 2003, Curry was performing her duties in her assigned unit, alone.

6  FAC, ¶ 29. While working, Owens attacked Curry and violently assaulted her. He seized

7  Curry from behind, placed her in a headlock, and began cutting the back of her neck with

8  the end of a metal can lid. Id. at ¶ 30. Owens subsequently grabbed Curry and threw her

9  down the stairs. Id. Owens' attack was stopped only when the control booth officer shot at

10 Owens with a rubber bullet. Id. Plaintiffs allege that following the attack, prison officials

11 searched Owens' cell and uncovered drawings of plaintiff Curry in sexually explicit and

12 violent poses. FAC, ¶ 31.

13      5.   Plaintiff Shelly Adcock ("Adcock")

14      Adcock was employed by CDCR as a correctional officer in 1986, and assigned to

15 CSP Sacramento up until her retirement from CDCR in February 2009. See FAC, ¶ 6.

16 Other than these facts, the FAC contains no other allegations regarding Adcock's individual

17 experience with IEX behavior.

18      6.   Plaintiff Kimberley Morin ("Morin")

19      Morin was employed as a group facilitator for CDCR in 2002, and since May 2003,

20 has been continuously assigned to work at CSP Sacramento. See FAC, ¶ 10. Plaintiffs

21 allege that Morin has been sexually harassed and assaulted by inmates on a consistent

22 basis, since she began working at CSP Sacramento. Id., ¶ 35. Specifically, inmates who

23 engage in exhibitionist masturbation behavior are permitted to attend treatment groups that

24 Morin and/or her female co-workers facilitate, and inmates constantly expose their genitals,

25 and masturbate and ejaculate during such groups. Id. During 2009, Morin completed "115

26 reports" for inmate IEX incidents on a variety of inmates.

27      From October 2009 to March 2010, inmate Bloxton frequently masturbated and

28

4

United States District Court
For the Northern District of California

1   made inappropriate sexual comments to Morin while attending her group.  FAC, ¶ 36.

2   Although Bloxton should have been wearing a special exposure control jumpsuit at the time

3   he engaged in this sexual misconduct, he was not.  Id.

4        Plaintiffs allege that Morin has repeatedly requested that repeat offenders be

5   prohibited from attending her group sessions, or alternatively, that such repeat offenders

6   not be placed in her groups.  See id., ¶ 38.  Such requests have been consistently denied,

7   however.  Id.  Plaintiffs allege that as a rule, custody officers will not remove inmates who

8   are masturbating through their clothing during group therapy sessions, and will only remove

9   such inmates if they expose themselves.  Id.

10        7.    Plaintiff Patricia Moreira ("Moreira")

11        Moreira began her employment as a correctional officer with CDCR in 2000, and is

12   currently assigned to the California Medical Facility at Vacaville ("CMF Vacaville").  See

13   FAC, ¶ 7.  In September 2003, Moreira, along with other female correctional officers

14   assigned to CMF Vacaville, complained to CDCR supervisors and officials about inmate

15   exhibitionist masturbation.  FAC, ¶ 32.  Plaintiffs allege that notwithstanding these

16   complaints, CDCR refused to address the problems highlighted in the complaints, and

17   failed to even investigate the complaints for approximately seven months.  Id.

18        8.    Plaintiff Lisa R. Boyd ("Boyd")

19        Boyd began her employment with CDCR as a youth correctional counselor in 2007,

20   and in April 2008, she transferred to her present assignment at CMF Vacaville, as a

21   recreational therapist.  See FAC, ¶ 9.  Plaintiffs allege that as recently as 2010, Boyd's

22   reports of IEX incidents were ignored by CDCR officials.  See FAC, ¶ 34.  Plaintiffs allege

23   that since April 2010, an inmate who is a "repeat masturbator" has been permitted to attend

24   group sessions with Boyd despite Boyd's complaints about the inmate's chronic IEX

25   behavior, and his threats against her.  See FAC, ¶ 34.  Plaintiffs further allege that Boyd's

26   ability to perform her duties has been adversely impacted by a September 2010 incident in

27   the workplace, in which a female employee was assaulted with urine, feces, and blood by

28

1   an inmate, after the inmate had been written up by the female employee for an IEX

2   incident.  Id.  That inmate was allowed to return to the female employee's group.

3       9.    Plaintiff Karen Currie ("Currie")

4       Currie began her employment as a correctional officer for CDCR in 1984, and since

5   1994, has been continuously assigned to Corcoran.  See FAC, ¶ 8.  Plaintiffs allege that

6   Currie made repeated requests to move inmates who sexually harassed female guards out

7   of her building.  FAC, ¶ 33.  These requests were denied, and plaintiffs allege that as

8   recently as January 2005, Curries' reports of IEX incidents were ignored by supervisors at

9   Corcoran.  See id.

10      10.    Plaintiff Raissa Jeffries ("Jeffries")

11      Jeffries began her employment as a correctional officer with CDCR in 2003, and

12  since 2003, has been continuously assigned to Corcoran.  See FAC, ¶ 11.  Jeffries is in

13  constant contact with male inmates every working day, and her duties include observing

14  male inmates in dorm settings and in their cells.  Plaintiffs allege that Jeffries has witnessed

15  numerous IEX incidents at Corcoran, including three she observed on October 7, 2010.

16  Id., ¶ 39.  She has been informed on different occasions that her 115 report forms were

17  lost, or that other problems with the forms had arisen.  Id., ¶ 41.  Jeffries has also been

18  made aware of IEX incidents experienced by other female officers within the past two

19  years.

20                                    * * *

21      Collectively, plaintiffs allege that their experiences arise out of the same policy of

22  discrimination that exists at all CDCR institutions, which policy condones and accepts

23  inmates' IEX behavior directed at female staff.  See FAC, ¶ 42.  Plaintiffs further allege that

24  CDCR's policies and practices have substantially interfered with plaintiffs' employment on

25  the basis of their sex, requiring plaintiffs to submit to pervasive, lewd and lascivious

26  conduct, as well as intimidation and threats as a condition of their employment.  See id.

27  CDCR allegedly continues to refuse to take prompt or effective remedial action in order to

28

United States District Court

For the Northern District of California

1    address this ongoing harassment.  Id.

2        Plaintiffs further allege that in response to complaints made by plaintiffs about the

3    sexual harassment of female officers based on IEX incidents, defendants repeatedly

4    retaliated against and "falsely disciplined" the complainants, including plaintiffs Longo, Boyd

5    and Morin.  FAC, ¶ 45.  With respect to plaintiff Curry, plaintiffs also allege that she was

6    discriminated against on the basis of race and gender.  See id., ¶¶ 47-49.

7    B.    Procedural History

8        On July 9, 2003, plaintiffs Berndt, Longo, and then-plaintiff Linda Scott filed the

9    original class action complaint in this case, alleging that defendant CDCR and several of its

10   employees had violated various civil rights statutes, including Title VII of the 1964 Civil

11   Rights Act.  After several rounds of motion practice and subsequent iterations of their

12   complaint (in which new claims and parties were added and/or removed), plaintiffs finally

13   filed the operative fifth amended complaint on January 31, 2011.  See generally FAC.  The

14   FAC is stated against defendant CDCR and individual defendants Schwartz, McGrath,

15   Skerik, and Winslow.

16       The FAC asserts three causes of action against defendants:

17   (1)    sex discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq. (all

18          plaintiffs against defendant CDCR);

19   (2)    deprivation of Fourteenth Amendment equal protection guarantee, in violation

20          of 42 U.S.C. § 1983 (plaintiffs Berndt, Hastings, Longo, Moreira against

21          various defendants); and

22   (3)    gender and race discrimination in violation of Title VII, 42 U.S.C. § 2000e et

23          seq. (plaintiff Curry against CDCR)

24   See FAC, ¶¶ 55-84.  The first cause of action under Title VII is brought as a class

25   action claim (the remaining claims are not).  Specifically, plaintiffs seek to represent a class

26   comprised of: "all women employed by the defendant California Department of Corrections

27   and Rehabilitation (CDCR) at any time since November 1989, at any facility under the

28
                                           7

United States District Court

For the Northern District of California

1    control of CDCR at which male inmates are incarcerated and incidents of inmate

2    exhibitionist masturbation have been reported." Id., ¶ 59.[2]

3    C.    The Freitag Litigation

4         The present action arises out of prior litigation in this district involving similar parties

5    and issues.  Specifically, in Freitag v. Ayers, C 00-2278 THE, a female plaintiff alleged that

6    the CDCR and specifically, Pelican Bay State Prison and its administrators, were

7    delinquent in addressing the sexually hostile environment created by prison inmates – in

8    particular, the pervasive practice at Pelican Bay of inmate exhibitionist masturbation

9    directed at female officers.  Plaintiff further alleged that she was retaliated against and

10   ultimately terminated due to her repeated complaints regarding the problem.  Plaintiff

11   sought relief pursuant to Title VII and 42 U.S.C. § 1983.

12        Following dispositive motions and a trial that resulted in a verdict for plaintiff with

13   respect to hostile work environment and retaliation claims under Title VII, and a section

14   1983 claim against the individual defendant administrators, defendants appealed to the

15   Ninth Circuit.  See Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006).  The Ninth Circuit

16   affirmed the jury's verdict that the CDCR was liable under Title VII for maintaining a hostile

17   work environment at Pelican Bay, and for retaliation against plaintiff in response to her

18   repeated complaints.  See 468 F.3d at 541- 42, 548 (noting "[t]here was overwhelming

19   evidence presented to the jury that the CDCR maintained a hostile work environment at

20   Pelican Bay by failing to take prompt and reasonable corrective action with respect to

21   Freitag's multiple complaints regarding inmate exhibitionist masturbation directed at her

22   and other female correctional officers")("[t]here was also overwhelming evidence that

23   //

24   //

25

26

27        [2]    As will be more fully discussed below, this class definition is different than that
     set forth on the first page of plaintiffs' motion for class certification, presently before the court.
28

8

United States District Court

For the Northern District of California

1  agents of the CDCR retaliated against Freitag as a result of those complaints").[3]

2      Following the <u>Freitag</u> appeal, the district court issued an injunction ordering Pelican

3  Bay to develop a remedial plan to address and manage inmate sexual conduct.  The CDCR

4  subsequently executed an IEX management procedure at Pelican Bay that seeks to curb

5  IEX incidents.  Thereafter, in September 2006, the CDCR began work on an Indecent

6  Exposure Incidents and Sexual Disorderly Conduct policy, to be implemented in all CDCR

7  adult male institutions statewide.  <u>See</u> Docket No. 283 at 4:20-5:10.  This policy is codified

8  in Title 15 of the California Code of Regulations and the Department Operations Manual.

9  <u>See id</u>.[4]

10  D.    Instant Motion

11      Plaintiffs have previously filed two motions for class certification – in November 2008

12  and May 2010 – in connection with claims raised in prior iterations of their complaint.  The

13  instant, revised motion for class certification was filed on July 22, 2011.

14      As pled in their complaint and as stated in their moving papers, plaintiffs seek

15  certification of a Title VII class only.  With respect to identified grounds for certification,

16  however – and as further highlighted below – the complaint and the moving papers differ,

17  as each sets forth different grounds for certification.  The FAC alleges that certification of

18  the single, above-referenced "class" is appropriate pursuant to Federal Rule of Civil

19  Procedure 23(b)(1)(A) and (b)(2).  Plaintiffs' moving papers, by contrast, newly assert that

20  certification of two distinct "classes" – each with its own "subclass" – is appropriate

21  pursuant to Rule 23(b)(3), in addition to Rules 23(b)(1)(A) and 23(b)(2).

22      Notwithstanding the discrepancy in plaintiffs' identified grounds therefor, plaintiffs'

23  request for certification is now before the court for analysis and disposition.  Although it is

24  _____

25  [3]    The Ninth Circuit remanded the section 1983 claim to the district court, however,
   after finding that the jury instructions had permitted the jury to consider both unprotected and
26  protected speech in considering the merits of plaintiff's section 1983 retaliation claim against
   the individual defendants.  <u>Id</u>. at 546.

27  [4]    At the hearing on plaintiffs' motion, plaintiffs' counsel conceded that IEX policies
28  had been put in place at CDCR institutions between 2006 and 2007.

United States District Court

For the Northern District of California

1   not clear to the court that it would be proper to certify a class that is not identified in the

2   complaint, the court nevertheless proceeds with a determination of this motion on the

3   merits.

**DISCUSSION**

4

5   A.   Legal Standard

6       In order for a class action to be certified, plaintiffs must prove that they meet the

7   requirements of Federal Rule of Civil Procedure 23(a) and (b).  As a threshold to class

8   certification, plaintiffs must satisfy four prerequisites under Rule 23(a).  First, the class must

9   be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ.

10  P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R.

11  Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical

12  of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the person

13  representing the class must be able to protect fairly and adequately the interests of all

14  members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification

15  bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel.

16  Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Wal-Mart Stores, Inc. v.

17  Dukes, 131 S.Ct. 2541, 2551 (2011).

18      If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether

19  to certify the class under one of the three subsections of Rule 23(b), pursuant to which

20  named plaintiffs must establish that either 1) there is a risk of substantial prejudice from

21  separate actions; or 2) declaratory or injunctive relief benefitting the class as a whole would

22  be appropriate; or 3) common questions of law or fact common to the class predominate

23  and that a class action is superior to other methods available for adjudicating the

24  controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

25      The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

26  determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

27  177 (1974).  It will, however, scrutinize plaintiffs' legal causes of action to determine

28

United States District Court

For the Northern District of California

1   whether they are suitable for resolution on a class wide basis.  See, e.g., Moore v. Hughes

2   Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination will

3   sometimes require examining issues that overlap with the merits.  See Wal-Mart Stores,

4   131 S.Ct. at 2551-52 (acknowledging that frequently, court's "rigorous analysis" will entail

5   some overlap with the merits of the plaintiff's underlying claim).  The court will consider

6   matters beyond the pleadings, if necessary, in order to ascertain whether the asserted

7   claims or defenses are susceptible of resolution on a class wide basis.  See McCarthy v.

8   Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

9   B.    Legal Analysis

10          As noted, in this motion but not in the complaint, plaintiffs seek certification of two

11  classes pursuant to Federal Rules of Civil Procedure 23: a Rule 23(b)(2) class (and

12  subclass) of current employees seeking statewide injunctive relief; and a Rule 23(b)(3)

13  class (and subclass) of former and current employees who request monetary relief in the

14  form of compensatory damages.  Specifically, the Rule 23(b)(2) class plaintiffs seek to

15  certify is comprised of: "all women currently employed at any facility under the control of

16  CDCR at which male inmates are incarcerated and incidents of inmate exhibitionist

17  masturbation have been reported, as well as the subclass of women employed by CDCR at

18  Pelican Bay State Prison."  See Mot. Class Cert. at 1:8-12.  The Rule 23(b)(3) class is

19  comprised of: "all women employed at any time since November 1989 at any facility under

20  the control of CDCR at which male inmates are incarcerated and incidents of inmate

21  exhibitionist masturbation have been reported, as well as the subclass of women employed

22  by CDCR at Pelican Bay State Prison."  See id. at 1:13-17.[5]

23          The court has struggled for several months to resolve this class certification motion

24  that is so untethered to the operative complaint.  In the FAC, plaintiffs seek certification of a

25  single class (not comprised of any subclass) represented by all named plaintiffs, with the

26

27          [5]     The Rule 23(b)(3) class definition is more closely aligned with the class definition
28  found in the complaint, which is asserted pursuant to Rule 23(b)(1)(A) and (b)(2).

11

United States District Court

For the Northern District of California

1   exception of Longo.  The FAC makes no mention of Rule 23(a) specifically (though it does

2   set forth the correct 23(a) requirements), nor does it mention Rule 23(b)(3) or its

3   requirements, rather it cites only Rule 23(b)(1)(A) and Rule 23(b)(2).  By contrast, in their

4   motion papers, plaintiffs seek certification of two classes instead of one, and two additional

5   subclasses.  The two classes sought to be certified are furthermore comprised of different

6   class members and represented by different and distinct class representatives.

7   Furthermore, no class representatives are specifically proffered for the additional

8   subclasses; three named plaintiffs are identified as having worked at PBSP, but it is not

9   clear if all three are being proffered as representatives or whether they would be

10  appropriate representatives in any event.  The motion papers also seek certification of one

11  class (and subclass) under Rule 23(b)(2) and one class (and subclass) under Rule

12  23(b)(3), notwithstanding that the latter section is not cited as a basis for certification of the

13  one class that *is* cited in the complaint.

14       The lack of fidelity to the complaint, and the corresponding lack of precision in

15  plaintiffs' motion papers, makes any Rule 23 analysis almost impossible.  For example,

16  while – and to the extent the court understands plaintiffs' arguments – the court is

17  somewhat persuaded that plaintiffs are likely to be able to satisfy typicality and adequacy

18  under Rule 23(a)(3) and (a)(4) (except perhaps for plaintiff Longo who is represented by

19  her estate), it is impossible to make any conclusion or findings as to numerosity or

20  commonality, given the impossibility of discerning which classes and subclasses are even

21  properly before the court.  The briefing also reflects grave deficiencies in the plaintiffs' class

22  action showing as a whole, which deficiencies are set forth in greater detail below.

23       Although the court's consideration of class certification usually commences with

24  analysis of Rule 23(a), because the Rule 23(b) analysis highlights most of the deficiencies

25  inherent in plaintiffs' showing, and because plaintiffs must meet the requirements of both

26  sections in order to obtain class certification, the court begins its discussion with Rule 23(b)

27  instead.

28

1    Before doing so, however, the court makes a few preliminary observations.  As

2   previously noted, the court has difficulty squaring plaintiffs' request for class certification,

3   with the operative complaint in the action.  Plaintiffs appear to be seeking certification of

4   classes that are distinct from the class(es) alleged in plaintiffs' fifth amended complaint.  As

5   already noted, the FAC specifically alleges a single class consisting of "all women

6   employed by the defendant California Department of Corrections and Rehabilitation

7   (CDCR) at any time since November 1989, at any facility under the control of CDCR at

8   which male inmates are incarcerated and incidents of inmate exhibitionist masturbation

9   have been reported."  Id., ¶ 59.  The FAC further alleges a class pursuant to Rule

10   23(b)(1)(A) and (b)(2).  Id.  However, this class description does not overlap with plaintiffs'

11   description of the relevant class, as stated in plaintiffs' more recently filed motion papers.

12   The FAC makes no mention, for example, of two classes and two Pelican Bay subclasses,

13   nor does it mention a Rule 23(b)(3) class.  Furthermore, plaintiffs' present motion makes no

14   serious mention or analysis of a Rule 23(b)(1)(A) class, notwithstanding that the FAC

15   pleads as much.

16    Additionally, the temporal scope of plaintiffs' proposed classes – as alleged in the

17   complaint and as presented here – is unclear.  Plaintiffs seek certification of claims that go

18   back as far as 1989 – more than twenty two years ago, and nearly fifteen years before the

19   filing of the original complaint in this action.  This vast claim period raises the obvious

20   question whether certain of the putative class members' claims are time-barred (an

21   argument raised by defendants at the hearing but not briefed by either party).

22    Added to this uncertainty, is the impact of the Freitag litigation on the class claims.

23   Plaintiffs' counsel themselves have conceded that in response to the Freitag litigation,

24   sometime between 2006 and 2007, the defendant put policies in place at all CDCR

25   institutions that were meant to address the problem of IEX behavior.  Depending on

26   whether plaintiffs' claims pre-date such policies, the very nature of plaintiffs' claims – i.e.,

27   whether plaintiffs allege a wholesale failure to implement policy in response to IEX

28

13

United States District Court
For the Northern District of California

1   behavior, or whether plaintiffs allege a failure to abide by policies already in place – may

2   differ.  Yet plaintiffs' class definition, as alleged in the complaint and as argued, makes no

3   effort to distinguish these claims.

4       All of which makes it nearly impossible from the outset to understand the precise

5   nature of the plaintiffs or claims before the court, or at the most basic level, to ascertain the

6   members who will comprise the class, or the specific relief they seek.  As highlighted

7   below, this fundamental deficiency makes it impossible for plaintiffs to demonstrate that

8   certification of a plaintiff class under either Rule 23(b)(2) or 23(b)(3) is warranted.

9           1.      Rule 23(b)(2) class

10      Rule 23(b)(2) permits class actions for declaratory or injunctive relief if "the party

11  opposing the class has acted or refused to act on grounds that apply generally to the class,

12  so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

13  class as a whole...."  Class certification under Rule 23(b)(2) is appropriate "only where the

14  primary relief sought is declaratory or injunctive."  See Zinser v. Accufix Research Institute,

15  Inc., 253 F.3d 1180, 1195 (9th Cir. 2001); Ellis v. Costco Wholesale Corp., 657 F.3d 970,

16  986 (9th Cir. 2011).  Here, plaintiffs seek injunctive relief on behalf of a class of all women

17  currently employed at any CDCR facility at which male inmates are incarcerated and IEX

18  incidents have been reported, as well as on behalf of a subclass of such women at Pelican

19  Bay State Prison.  In support of their request for certification of a (b)(2) class, plaintiffs rely

20  on declarations from both the named plaintiffs and putative class members, which

21  declarations purportedly demonstrate the declarants' "numerous attempts" – eventually

22  unsuccessful – to have CDCR officials take actions to correct "the pervasive, system-wide

23  problem of the hostile work environment created by the exhibitionist masturbation by

24  inmates."  Mot. Class Cert. at 24:19-26.

25      Defendants, however, respond by noting several insurmountable procedural and

26  substantive hurdles for plaintiffs.  They highlight, for example, the following procedural

27  barriers to certification of a (b)(2) class: plaintiffs' proposed class is not ascertainable;

28

United States District Court

For the Northern District of California

1    plaintiffs' proposed subclass is vaguely defined and barred by res judicata; and plaintiffs

2    have failed to exhaust their administrative remedies as required under Title VII.

3    Substantively, defendants point out that class-wide injunctive relief is unnecessary, since of

4    the three named plaintiffs who remain currently employed by CDCR,[6] two have

5    acknowledged in their deposition testimony the efforts made by the CDCR to respond to

6    IEX complaints pursuant to an adequate system-wide IEX policy in place by 2006-07, and

7    the third has conceded in similar testimony that IEX inmates initially disciplined with

8    removal from her groups never repeated IEX behavior once allowed back into her groups.

9         The court ultimately agrees with defendants, at least in part. As a preliminary

10   matter, the court is not persuaded by defendants' argument that plaintiffs' class definition,

11   for Rule 23(b)(2) purposes specifically, is so overly broad as to be unascertainable.

12   Defendants contend that plaintiffs' class definition, which includes "all women currently

13   employed at any CDCR facility at which male inmates are incarcerated and IEX incidents

14   have been reported" fails to distinguish between those putative female class members who

15   interact or who have had interaction with male inmates at CDCR facilities and those who do

16   not and/or have not, and thus fails to distinguish between class members who will suffer a

17   Title VII injury by the alleged hostile work environment, and those who will not. However,

18   insofar as plaintiffs' (b)(2) class seeks injunctive relief only and thus only prospective

19   conduct will be enjoined, the court is satisfied that the proposed (b)(2) class definition

20   satisfactorily describes and reaches members of the class who *may* experience harm as a

21   result of IEX incidents at some point in the future.

22        This observation, however, begs the remaining questions raised by defendants,

23   which questions are not so easily resolved. Defendants query, for example, the purpose

24   served by a Pelican Bay subclass that seeks injunctive relief that is in essence similar or

25   identical to that previously sought in the <u>Freitag</u> litigation. They correctly note that, under

26   _____

27        [6]    Defendants note that plaintiff Boyd has left her position with CDCR and does not
     intend to return to work for defendant. As such, Boyd is no longer a 'current' employee of
28   defendant, and thus cannot represent putative members of the (b)(2) class.

United States District Court

For the Northern District of California

1  the doctrine of res judicata, the injunctive relief sought by a Pelican Bay subclass would be

2  barred.  Res judicata bars litigation in a subsequent action of any claims that were raised or

3  could have been raised in a prior action.  See West. Radio Servs. Co., Inc. v. Glickman,

4  123 F.3d 1189, 1192 (9th Cir. 1997)(doctrine applies where there is (1) an identity of

5  claims; (2) a final judgment on the merits; and (3) privity between parties).  Here, the

6  Freitag action involved an identical Title VII claim alleging hostile workplace harassment

7  against defendant CDCR, as a result of the CDCR's improper response to IEX incidents.

8  Permanent injunctive relief was also granted to the Freitag plaintiff, requiring CDCR to

9  implement and enforce IEX policies at Pelican Bay – precisely the same injunctive relief

10  sought by the Pelican Bay subclass here.  And although the putative members of the

11  Pelican Bay subclass here were not actual parties to the Freitag litigation, defendants

12  correctly contend that they do have a sufficient commonality of interest with plaintiff in

13  Freitag, such that privity can be found.  See Class Plaintiffs v. City of Seattle, 955 F.2d

14  1268, 1277-78 (9th Cir. 1992).  Thus, all the requirements for application of the res judicata

15  doctrine appear satisfied.

16        Defendants are also correct that plaintiffs have not met administrative exhaustion

17  requirements that are mandated by Title VII.  A party alleging employment discrimination

18  under Title VII must file a claim with the EEOC within 300 days after the alleged unlawful

19  practice.  See 42 U.S.C. § 2000e-5(e).  A party who has filed a timely EEOC charge may

20  also bring a class action on behalf of members who have not filed such charges; however,

21  the named plaintiff must have secured a right to sue by timely following the procedures set

22  forth in Title VII.  See Inda v. United Air Lines, Inc., 565 F.2d 554, 559 (9th Cir. 1977).

23  Here, plaintiffs Moreira, Morin, and Jeffries are the named plaintiffs who are alleged to be

24  current employees of CDCR, and who seek to represent the injunctive relief class pursuant

25  to Rule 23(b)(2).  However, there is no evidence that any one of them has filed an EEOC

26  charge on her own behalf, or on behalf of a class.  Accordingly, and pursuant to Inda, there

27  has been no administrative exhaustion by any named plaintiff that would permit a Title VII

28

United States District Court

For the Northern District of California

1    law suit to proceed.

2        Nor can plaintiffs rely upon the EEOC charge filed by named plaintiff Hastings in

3    2003, or the EEOC complaints of named plaintiffs Curry and Currie in 2004 and 2005.  All

4    of these named plaintiffs seek to represent members of a Rule 23(b)(3) class only.

5    Plaintiffs do not submit any legal authority that supports the proposition that a named

6    plaintiff's exhaustion of administrative remedies with respect to one putative class, may

7    serve as a basis for finding that other named plaintiffs who seek to represent an entirely

8    separate class, have also satisfied their administrative exhaustion requirements.  Moreover,

9    this seems particularly relevant here, where the two classes sought to be certified are not

10   coterminous.  Hastings, Curry, and Currie are alleged to be former and current employees,

11   moreover, while the current (b)(2) class sought to be certified is comprised of only current

12   employees.  Thus, absent authority for plaintiffs' cross-pollenization theory, the court

13   declines to find such theory valid.

14       Plaintiffs' resulting failure to demonstrate that any 23(b)(2) named class

15   representative has exhausted administrative remedies as required by Title VII, is fatal to

16   plaintiffs' request for certification of a (b)(2) class.  Even if it weren't, however, defendants

17   have cast doubt on plaintiffs' substantive assertion that defendants have refused to act or

18   have acted on grounds that are generally applicable to the class.  First, as defendants

19   highlight, several of the named (b)(2) class representatives have testified that the CDCR

20   makes efforts to respond to IEX complaints pursuant to an adequate system-wide IEX

21   policy that has been in place since at least 2006 or 2007.  Second, and furthermore, since

22   an individualized determination would be required in order to determine whether defendant

23   had declined to act in accordance with the IEX policy in place since 2006-07, as detailed

24   elsewhere herein, plaintiffs have not demonstrated defendants' failure to act on grounds

25   generally applicable to the class as a whole, at least for claims post-dating the policy.

26       In sum, and for all the foregoing reasons, the court must, and does, DENY plaintiffs'

27   request for certification of an injunctive relief class pursuant to Rule 23(b)(2).

28

United States District Court

For the Northern District of California

1      2.      Rule 23(b)(3) class

2          By way of their motion (but not, as noted, their complaint), plaintiffs also seek

3  certification pursuant to Rule 23(b)(3), which requires plaintiffs to establish that questions of

4  law or fact common to the class predominate, and that a class action is superior to other

5  methods available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

6  "[P]redominance... tests whether proposed classes are sufficiently cohesive to warrant

7  adjudication by representation,.. a standard far more demanding than the commonality

8  requirement of Rule 23(a)."  See Dukes, 603 F.3d at 593.  Thus, "cases in which the parties

9  are contesting facts underlying the Rule 23(b)(3) determination may often require more

10  determinations by the district court than those in which Rule 23(a)(2) is the primarily

11  contested issue."  See id. ("We thus should not be surprised that a district court will have to

12  make more precise factual determinations under Rule 23(b)(3) than under Rule 23(a)(2)").

13  Plaintiffs contend that certification of a (b)(3) class is appropriate here, because "the claims

14  of every class member will depend on a finding of a failure to take prompt and effective

15  action against the pervasive hostile working environment," and because the monetary relief

16  sought "will depend on establishing that there has been a policy by CDCR not to take

17  effective action to correct inmate behavior...".  See Mot. Class Cert. at 25:4-14.

18          As is the case with plaintiffs' request to certify a Rule 23(b)(2) injunctive class,

19  however, plaintiffs' request to certify a Rule 23(b)(3) damages class also suffers from

20  procedural and substantive deficiencies that ultimately prove fatal.

21          First, defendants have correctly objected to the overly broad nature of plaintiffs'

22  class definition.  Plaintiffs seek to certify a class consisting of "all women" employed by any

23  CDCR facility at any time since November 1989, "at which male inmates are incarcerated

24  and incidents of inmate exhibitionist masturbation have been reported."  This definition

25  brushes with too broad a stroke.  For purposes of establishing a claim for money damages

26  on a classwide basis, plaintiffs must demonstrate that the class as a whole suffered harm.

27  Yet plaintiffs' definition fails to distinguish between women who were actually subjected to

28

18

United States District Court

For the Northern District of California

1  an IEX incident, and those who were not.  Only the former can possibly demonstrate a past

2  injury, since logic dictates that the latter cannot complain of harassment where they have

3  not experienced any grounds for such a claim.  Thus, because plaintiffs' class definition

4  fails to limit itself to class members who have actually suffered harm by reason of

5  defendants' alleged harassment, it is impermissibly broad.

6      It is furthermore difficult to ascertain from plaintiffs' class definition the claims being

7  alleged by the putative class.  As the parties' papers allude to and as the parties' counsel

8  clarified for the court at the hearing on plaintiffs' motion, defendant CDCR implemented and

9  codified policies at all CDCR institutions post-Freitag, beginning in 2006, in order to

10  establish a system-wide policy that addresses IEX incidents at CDCR institutions.  Yet

11  plaintiffs' class definition spans nearly 23 years.  Thus, it is unclear from the class definition

12  whether the class plaintiffs seek to represent is asserting a failure by defendant to

13  implement any IEX policies *at all* (which claims would pre-date Freitag), whether the class

14  members are asserting defendant's failure to act in accordance with established IEX

15  policies (i.e., post-Freitag conduct), or both.  The proposed class definition is therefore

16  impermissibly broad for this additional reason, as well.

17      Indeed, the overly broad nature of plaintiffs' class definition also hints at yet another,

18  and larger, problem that was first suggested to the court at the hearing on this matter:

19  whether any number of class claims are time-barred.  Plaintiffs' operative complaint alleges

20  that plaintiffs Berndt and Hastings – both of whom are among the named plaintiffs who

21  purport to represent the (b)(3) class – filed EEOC charges on March 11 and October 20,

22  2003, respectively.  See FAC, ¶¶ 43-44.  Both charges were allegedly filed within 300 days

23  of the last act of discrimination alleged in the complaint.  Id.  Applying the relevant

24  limitations period to these allegations under Title VII, plaintiffs' claims may not date back

25  farther than May 15, 2002 – the earliest date that the statute of limitations began to run for

26  either of these plaintiffs.  Plaintiffs' proposed class definition – which covers class members

27  whose employment with the CDCR dates back to 1989 – is thus far too overly inclusive.

28

19

1    And since it is impossible to tell from plaintiffs' evidence or argument which or how many

2    class members fall within the appropriate statute of limitations period, the class is simply

3    not ascertainable as currently pled.

4         All of these deficiencies render certification of a (b)(3) class untenable.  Even if the

5    court were able to proceed, however, plaintiffs would still be unable to meet their burden to

6    demonstrate that the predominance element is satisfied.  As defendant notes, the Ninth

7    Circuit in Freitag made clear that, in order for sexual harassment liability to attach to

8    defendant CDCR under Title VII in the circumstances alleged here, plaintiffs must

9    demonstrate that the defendant institution failed to take "proper preventative and remedial

10   steps with regard to inmate behavior."  See Freitag, 468 F.3d at 539.  Plaintiffs cannot do

11   so here, however, without an individualized inquiry.

12        As has already been noted, the only commonality among plaintiffs and class

13   member declarants, is that they each witnessed an IEX incident.  The plaintiff class

14   otherwise consists of: female employees with different job duties and responsibilities

15   (ranging from correctional officer to treatment group facilitators); female employees who

16   worked at various CDCR facilities; female employees who witnessed IEX incidents under

17   differing circumstances and at different points in time; female employees who complained

18   to CDCR about the manner in which IEX incidents were handled; female employees who

19   did not complain to CDCR about the manner in which IEX incidents were handled; and

20   female employees who admitted they obtained the relief they sought when they requested

21   CDCR intervention.  See Docket No. 351, ¶ 27; Docket No. 351 at 4:1-4, 6:15-7:20, 8:4-19,

22   9:3-17, 12:5-18, 13:7-19, 14:23-15:12, 15:13-16:14, 10:16-11:3; Allen Decl., ¶ 4, Ex. 1 at

23   278:15-280:3, 280:19-286:9, 287:4-290:11, 290:17-292:22, 295:7-296:3; Allen Decl., ¶ 6,

24   Ex. 4 at 227:12-228:5.  These facts suggest that only an individualized inquiry would

25   answer the question whether defendant CDCR has taken "proper preventative and

26   remedial steps" with regard to IEX incidents at a given institution and in response to a given

27   complaint by a female CDCR employee.

28

United States District Court

For the Northern District of California

1    Even if plaintiffs' showing didn't suffer from the foregoing deficiency, however,

2    plaintiffs would nonetheless have trouble establishing the 'superiority' of class action

3    treatment in this instance.  See Fed. R. Civ. Proc. 23(b)(3) (requiring that a "class action

4    [be] superior to other available methods for fairly and efficiently adjudicating the

5    controversy").  For even certification of a Title VII class here – sought as to two separate

6    classes with two separate subclasses – would still leave the court with additional claims to

7    adjudicate: the section 1983 violations alleged by four different plaintiffs, who each proceed

8    individually against distinct groupings of the individual defendants; and the Title VII

9    discrimination claim asserted by individual plaintiff Curry against defendant CDCR.  Since

10   these claims are comprised of numerous individual claims asserted against differing

11   defendants, certification of the classes at issue here hardly streamlines the issues to be

12   litigated at trial.  Plaintiffs, moreover, provide no explanation for how litigation of all these

13   matters within the context of a class action would be manageable, nor indeed, do they

14   provide any explanation for how any such litigation could be accomplished.  All of which

15   collectively suggests that allowing this action to go forward as a class action is not

16   necessarily the superior method for fairly and efficiently adjudicating the controversy.

17   Moreover, another problematic issue is that of damages.  While it is often true that

18   damages calculations alone cannot defeat certification, see Yokoyama  v. Midland Nat. Life

19   Ins. Co., 594 F.3d 1027, 1094 (9th Cir. 2010), that principle may not be applicable here,

20   where the emotional distress damages to every class member will depend on the individual

21   incidents, and on the kind and extent of IEX behavior they were exposed to, as well as the

22   promptness and efficacy, or lack of efficacy, of defendants' response to any complaints

23   they may have made.  Plaintiffs recognize the need for individual inquiry and suggest in

24   their reply brief that the damages could be determined by group or individual summary

25   judgment motions or jury trials.  However, the potential for multiple mini-trials, even solely

26   as to damages, further weakens the case for a finding of superiority in this instance.

27   In sum and as such, and in addition to all the foregoing deficiencies noted by the

28

21

United States District Court

For the Northern District of California

1   court, the court must necessarily DENY plaintiffs' request for certification of a class

2   pursuant to Rule 23(b)(3), on grounds that plaintiffs cannot establish that predominance is

3   satisfied.[7]

4       3.   Rule 23(a)

5       While the court's conclusions with respect to plaintiffs' Rule 23(b)(2) and (b)(3)

6   showings are sufficient in and of themselves to preclude class certification, the court takes

7   the opportunity to furthermore note that the same procedural and substantive concerns

8   raised in connection with the foregoing would also preclude a finding that plaintiffs have

9   adequately satisfied Rule 23(a).

10      While the court is persuaded that plaintiffs are likely to be able to establish typicality

11  and adequacy (except as to plaintiff Longo), it is impossible to make a concrete finding as

12  to numerosity given the problems described above.  The court is also hard pressed to

13  conclude that plaintiffs have or can demonstrate that the 'commonality' element of Rule

14  23(a) has been satisfied.  Commonality requires that there must be questions of law or fact

15  common to the class.  Fed. R. Civ. P. 23(a)(2).  The commonality preconditions of Rule

16  23(a)(2) have generally been construed permissively.  See Hanlon v. Chrysler Corp., 150

17  F.3d 1011, 1019 (9th Cir. 1998).  To share sufficient factual commonality to satisfy the

18  minimal requirements of Rule 23(a)(2), "[t]he existence of shared legal issues with

19  divergent factual predicates is sufficient, as is a common core of salient facts coupled with

20  disparate legal remedies within the class."  Staton v. Boeing Co., 327 F.3d 938, 953 (9th

21  Cir. 2003).  "Where the circumstances of each particular class member vary but retain a

22  common core of factual or legal issues with the rest of the class, commonality exists."

23  Parra v. Bashas', Inc., 536 F.3d 975, 978-79 (9th Cir. 2008); see also Wal-Mart, 131 S.Ct.

24  at 2551 (citations omitted)("What matters to class certification ... is not the raising of

25  common 'questions' – even in droves – but, rather the capacity of a classwide proceeding

26  ─────────────

27      [7]    To the extent defendants raise an objection to plaintiffs' standing to bring the
    instant certification motion, the court need not, and does not address this argument, in view
28  of the foregoing analysis.

United States District Court

For the Northern District of California

1    to generate common answers apt to drive the resolution of the litigation").

2         Plaintiffs contend that commonality is satisfied because of the existence of two

3    common questions of fact among all class members: (1) whether there is a "hostile work

4    environment within the scope of the decision in Freitag v. Ayers" at a significant number of

5    the institutions under the direction of CDCR; and (2) whether the CDCR is "aware of the

6    hostile work environment and [] has taken prompt and effective action to respond to the

7    situation."  See Mot. Class Cert. at 20:21-21:5.

8         On balance, however, the court is not persuaded that commonality has been

9    satisfied.  To show commonality, plaintiffs must do more than merely allege the foregoing

10   common questions.  Rather, they must pose those questions in such a way that will

11   "produce a common answer to the crucial question" – i.e., assuming IEX behavior

12   witnessed by a female employee and about which defendant was made aware, *how* did the

13   CDCR respond to such incidents.  See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981

14   (9th Cir. 2011).  It is defendant's response that will or will not give rise to liability – at least,

15   with respect to post-Freitag claims.

16        There are no such common answers in this case.  As defendants have correctly

17   noted, the only common factor among each named plaintiff and putative class member is

18   that they each witnessed an IEX incident.  The plaintiff class otherwise consists of female

19   employees with sufficiently varied job duties and responsibilities, sufficiently varied

20   exposure to IEX incidents, and sufficiently varied circumstances as to defendant CDCR's

21   response to each IEX incident about which a given female employee complained, that no

22   factually common answer to plaintiffs' overriding questions may be stated.  See Docket No.

23   351, ¶ 27; Docket No. 351 at 4:1-4, 6:15-7:20, 8:4-19, 9:3-17, 12:5-18, 13:7-19, 14:23-

24   15:12, 15:13-16:14, 10:16-11:3; Allen Decl., ¶ 4, Ex. 1 at 278:15-280:3, 280:19-286:9,

25   287:4-290:11, 290:17-292:22, 295:7-296:3; Allen Decl., ¶ 6, Ex. 4 at 227:12-228:5.[8]

26   _____

27        [8]    To the extent plaintiffs' claim is based on the absence of an IEX behavior policy
     at all (i.e., pre-Freitag claims), the court acknowledges that the mere fact that plaintiffs all
28   witnessed an IEX incident may very well suffice to show commonality.  However, as mentioned

1    For these reasons, the court finds that plaintiffs cannot demonstrate that the

2   commonality element is satisfied, and class certification must additionally be DENIED with

3   respect to both proposed classes, for failure to satisfy all Rule 23(a) requirements.

4   C.    Conclusion

5    For all the foregoing reasons – i.e., plaintiffs' lack of precision as to class definition,

6   failure to tailor the class definition to the claims asserted in the complaint, inclusion of what

7   appear to be time-barred claims, and failure to otherwise satisfy Rule 23(a) and (b)

8   requirements – the court accordingly DENIES plaintiffs' request for class certification.  If no

9   appeal is taken pursuant to Rule 23(f), the parties shall meet and confer within 30 days and

10  submit a stipulation as to a date for dispositive motions and a suggested date for trial.

11

12  **IT IS SO ORDERED.**

13  Dated: March 20, 2012

14                                              _____
                                                PHYLLIS J. HAMILTON
15                                              United States District Judge

16

17

18

19

20

21

22

23

24

25

26  _____

27  previously, it is impossible for the court to discern what portion of the class assert pre-<u>Frietag</u>
    claims.
28

24