UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

    Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

No. C 03-3174 PJH

**ORDER DENYING PLAINTIFFS BERNDT AND HASTINGS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Martha Berndt and Marta Hastings' motion for summary judgment came on for hearing before this court on August 6, 2014. Plaintiffs Berndt and Hastings ("plaintiffs") appeared through their counsel, Pamela Price. Defendant California Department of Corrections ("CDCR" or "defendant") appeared through its counsel, Lyn Harlan and Chris Young. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiffs' motion for summary judgment as follows.

## BACKGROUND

This case arises out of allegations that female correctional officers and employees of CDCR have been continuously sexually harassed by inmates at CDCR institutions. Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX") while working at CDCR institutions.

Specifically, the operative fifth amended complaint ("5AC") makes the following allegations:

**Berndt**: Plaintiff Berndt alleges that she began her employment as a correctional officer at Centinela State Prison in July 1994, and then worked at Pelican Bay State Prison

from May 1995 to July 2002. Berndt alleges that, on July 12, 2002, she was ordered by a supervisor (Sergeant David Skerik) to place inmate Goldwire Jackson in a cell, in full view of the control booth. 5AC, ¶ 24. Inmate Jackson is described in the 5AC as a "notoriously abusive exhibitionist masturbator." Id. Berndt claims that she made "strenuous objections" to this order, and gave an "explicit warning that the inmate would create an extremely hostile and dangerous environment if placed in front of the control booth." Id. Regardless, Skerik insisted that the inmate be placed there. Berndt also alleges that, from August 2001 through July 12, 2002, "inmate Jackson repeatedly sexually harassed" her "with taunts and threats." Id.

The complaint itself does not contain any additional factual allegations regarding Berndt, nor did Berndt file a supporting declaration in connection with this motion for summary judgment. However, Berndt did submit a declaration in support of a different motion for summary judgment - filed by the estate of Judy Longo (another plaintiff in this action). In that declaration, Berndt provides further detail regarding her alleged harassment by inmate Jackson. See Dkt. 620. Specifically, Berndt alleges that, "on December 2, 2001, inmate Goldwire Jackson [] first began his sexual misconduct towards" her. Dkt. 620, ¶ 3. Berndt alleges that, on that date, Jackson "continually exposed his erect penis while using his hair clippers," and then "turned his body sideways" so "no other officers could see him and masturbated, intentionally facing [her] direction so that [she] could see him masturbate." Id. Berndt alleges that she told Jackson "three times very clearly that his exhibitionist masturbation was not appreciated." Later, after two other officers left the cell, Jackson "openly masturbated" in front of Berndt and then "hid his penis when the two male officers returned." Id., ¶ 4. When one of the male officers returned, Jackson pulled up his pants, and the officer asked Berndt if she needed assistance." Berndt said yes, "because when he left, Jackson would again expose himself." Id. Berndt then filed a report (specifically, a "115 report") and informed a supervisor (Sergeant Van Nocker).

Berndt then alleges that, on June 2, 2002, she witnessed inmate Jackson "masturbating to the yard camera as he noticed that [Berndt] was the one monitoring the

2

yard camera." Dkt. 620, ¶ 5. Berndt notified a supervisor (Sergeant Willis).

Berndt then alleges that, on July 12, 2002, she was assigned to a control booth, and Jackson was placed in a holding cell eight feet from the booth. Dkt. 620, ¶ 6. Jackson "immediately dropped his boxers when he saw that the floor staff was no longer in view, and began masturbating." Id. Berndt notified a supervisor (Lieutenant Christ) about the incident, and Jackson "started shouting" at Berndt, saying things like "Shut up, bitch! You know you like it!" and "You ain't nothing but a whore!" Id., ¶ 7. At the end of that day, Berndt was told by a supervisor (Captain Scribner) that Jackson was going to be moved that night, but when Berndt returned to work the next morning, Jackson had not been moved. Id., ¶¶ 8-9. That same morning, Jackson complained of chest pains, and Berndt was assigned to move him so that he could be examined. Berndt alleges that, as he was being moved, Jackson gave her "an 'I got you' look," and that the "tone of his voice, his face, gesture, and laugh taunted" her. Id., ¶ 9. After the medical exam, Berndt refused to open the gate for Jackson, even after being given a direct order by a supervisor (Sergeant Willis). Berndt was then relieved of duty, and was told by Lieutenant Christ that she could not be put back in her same job position because she was "in no state of mind to continue." Id., ¶¶ 10-11. Berndt never did return to work, and formally retired in October 2003. Berndt further alleges that she was subjected to exhibitionist masturbation by 16 other inmates, in addition to Goldwire Jackson. Id., ¶ 12.

Berndt alleges that, prior to July 13, 2002, she "orally asked Sergeant Willis four or five times to remove inmate Jackson from [her] shifts, and every time, Sergeant Willis refused to move inmate Jackson from the unit and would send [Berndt] home instead." Dkt. 620, ¶ 13. Berndt alleges that she filed at least four 115 reports on inmate Jackson, but no action was ever taken. Berndt further alleges that, on July 12, 2002, she spoke to Sergeant Skerik, but he "avoided responding" to her and "insisted on placing inmate Jackson in the holding cell eight feet away from" Berndt, reasoning that "if [they] gave inmate Jackson an opportunity to 'mess up,' it would give CDC reason to place him on more restrictions." Id., ¶ 13.

3

**Hastings**: Plaintiff Hastings alleges that she began her employment with CDCR in 1986, and worked at Pelican Bay State Prison from November 1989 to January 2005. Hastings alleges that she attempted to report exhibitionist masturbation by an "inmate Thomas" in August 2003, but that her "complaints were ignored and two more exhibitionist masturbators were placed in her unit." 5AC, ¶ 26. Hastings further alleges that Pelican Bay management "failed to follow up" on her reports, and "failed to take any action to protect her from known exhibitionist masturbators." Id.

Both Berndt and Hastings assert two causes of action: (1) a sex discrimination claim under Title VII against defendant CDCR, and (2) a section 1983 claim (equal protection) against various individual CDCR employees[1]. The moving plaintiffs now seek summary judgment as to certain issues surrounding the first cause of action. Specifically, plaintiffs move the court for partial summary judgment on the following three issues:

> (1) Defendant CDCR is collaterally estopped from denying that there was a sexually hostile work environment at Pelican Bay State Prison during the time period 1998 to 2003 because of inmate masturbatory and indecent exposure acts directed at female correctional officers.
>
> (2) Defendant CDCR is collaterally estopped from denying that it failed to respond adequately or reasonably to the sexual abuse directed at female correctional officers by failing to take prompt and effective measures to control the actions of inmates, thereby maintaining a hostile work environment at Pelican Bay State Prison.
>
> (3) Defendant CDCR is collaterally estopped from denying that it failed to respond adequately or reasonably to the sexual abuse directed at female correctional officers at prisons under its jurisdiction from 1998 until 2007 by failing to take prompt and effective measures to control the actions of inmates.

Plaintiffs argue that the application of collateral estoppel is warranted based on the outcome of a previous case, also brought by a female CDCR correctional officer, involving similar allegations. See Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006). In Freitag, a female

---

[1]Specifically, Berndt and Hastings each assert a section 1983 claim against individual defendants Joseph McGrath and Teresa Schwartz (now named Teresa Reagle), and Berndt also asserts a section 1983 claim against individual defendant David Skerik. However, the claims against these individual defendants are not at issue in the present motion.

4

correctional officer at Pelican Bay brought suit against CDCR alleging, among other things, that she had been subjected to a hostile work environment under Title VII. The jury found CDCR liable on the hostile work environment claim, and the Ninth Circuit affirmed the jury's verdict. Id. at 541.

**DISCUSSION**

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

If a party makes a showing "that there is no genuine issue of material fact <u>as to particular claim(s) or defense(s)</u>, the court may grant summary judgment in the party's favor 'upon all or part thereof.'" Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2008) § 14:33 (emphasis added). "This procedure is commonly referred to as a 'partial summary judgment.'" Id. § 14:34.

B.  Legal Analysis

The application of collateral estoppel is appropriate only where (1) there was a full and fair opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. Syverson v. Int'l Business Machines Corp., 472 F.3d 1072, 1078 (9th Cir. 2007).

As a threshold matter, CDCR argues that offensive collateral estoppel cannot be applied against a state agency. See U.S. v. Mendoza, 464 U.S. 154, 160 (1984); Coeur D'Alene Tribe of Idaho v. Hammond, 384 F.3d 674, 689-90 (9th Cir. 2004); Coleman v. California Bd. of Prison Terms, 228 Fed.Appx. 673 (9th Cir. 2007). CDCR notes that plaintiffs have attempted to distinguish these cases by arguing that they apply only when a state agency is acting in its "rule-making capacity," but CDCR argues that no such distinction is drawn in the cases.

The court agrees that the cases cited by CDCR preclude application of offensive collateral estoppel against government agencies, without any distinction drawn as to

whether they are acting in a "rule-making capacity." The Supreme Court's decision in Mendoza was the first to do so, finding that "non-mutual offensive collateral estoppel is not to be extended to the United States." 464 U.S. at 158. The Mendoza court found that allowing collateral estoppel would "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." Id. at 159. Importantly, the Court rejected the lower court's attempt to apply collateral estoppel only in cases where there was not a "crucial need" for redetermination of a legal issue, finding that such a standard would be "so wholly subjective that it affords no guidance to the courts or to the government." Id. at 162. The Court also noted that, if offensive collateral estoppel were to be applied, the government would essentially be forced to appeal all adverse rulings, "because it cannot possibly anticipate, in determining whether or not to appeal an adverse decision, whether a court will bar re-litigation of the issue in a later case." Id.

While Mendoza did not specifically address the "rule-making capacity" distinction urged by plaintiffs, its clear rejection of "subjective" line-drawing appears to preclude plaintiffs' attempt to distinguish Mendoza. In fact, plaintiffs' reply brief raises one of the very problems identified by the Mendoza Court, as they argue that "CDCR is free to raise any issue on appeal to the Ninth Circuit, including seeking a reconsideration of the decision in Freitag." However, Freitag was decided in 2006, so under plaintiffs' reasoning, CDCR would have been forced to seek review of a decision in 2006 to avoid possible collateral estoppel in 2014, which is the exact scenario described by Mendoza.

The Ninth Circuit applied the rationale of Mendoza to state agencies in State of Idaho and Coeur D'Alene. Plaintiffs do correctly point out that the court in those cases looked at Idaho state law in reaching their decisions; however, in Coleman, the Ninth Circuit applied Mendoza, State of Idaho, and Coeur D'Alene in a case involving claims against a California state agency. See 228 Fed.Appx. at 675-76.

Overall, plaintiffs have not adequately distinguished Mendoza and its progeny, nor have they cited any cases where offensive collateral estoppel was applied against a state

7

agency. On that basis alone, plaintiffs' motion for summary judgment is DENIED.

Even if the court were to assume that offensive collateral estoppel could be applied against CDCR, it would not be applicable in this case on the issues identified by plaintiffs. Plaintiffs essentially argue that, because the Freitag court found that Freitag herself was subjected to a hostile work environment, that necessarily means that all female correctional officers at Pelican Bay were subjected to a hostile work environment. However, the nature of a hostile work environment claim is a fact-specific one.

To establish a claim for hostile work environment (or harassment) under Title VII, a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person. See, e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001). However, even if a plaintiff can show the existence of a hostile work environment to which she was subjected, the plaintiff must also establish that the employer is liable for the harassment that caused the hostile work environment to exist. Id.

In Freitag, the Ninth Circuit held that CDCR can be liable for inmate conduct if it "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct." 468 F.3d at 538. The court explained that liability is "grounded not in the harassing act itself – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action." Id.

In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that she was subjected to a sexually hostile work environment because of inmate conduct, (2) that CDCR knew or should have known that plaintiff was being subjected to such inmate conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate conduct. Element (3) has been phrased in a number of different ways – sometimes as requiring an "immediate and appropriate" response, sometimes as requiring "immediate

8

and/or corrective actions," and sometimes as requiring "corrective measures reasonably calculated to end the harassment," with reasonableness being measured by "the employer's ability to stop the harassment and the promptness of the response." See, e.g., Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968.  Regardless of the specific phrasing used, it is clear that element (3) requires a showing that the employer acted unreasonably in its response to the harassment.

Thus, to prevail on their Title VII claims, plaintiffs Berndt and Hastings must establish that they were subjected to a hostile work environment, and that CDCR failed to adequately respond to the harassment to which they were subjected.  The Freitag case dealt only with the hostile work environment to which Officer Freitag was subjected, and CDCR's response to the harassment to which she was subjected.

Specifically, in affirming the jury verdict, the Ninth Circuit found that "there is sufficient evidence that Freitag was repeatedly exposed to conduct of a sexual nature," and that "substantial evidence supports the jury's finding that the exhibitionist masturbation was sufficiently severe or pervasive to constitute abuse," noting that Freitag had been subjected to at least five incidents of exhibitionist masturbation.  468 F.3d at 540.  Plaintiffs note that the Ninth Circuit's opinion stated that "there was more than enough evidence to support the jury's finding that the prison failed to respond adequately or reasonably to the sexual abuse directed at Freitag and other female correctional officers," however, there is no indication that any complaints by those "other female correctional officers" were actually addressed by the jury's verdict, as the jury was considering only claims for damages brought by Freitag as an individual (not on behalf of a class).  In fact, the Freitag verdict form confirms that the jury's findings were limited to the conduct directed at Officer Freitag and CDCR's response to that conduct.  See Dkt. 618, Ex. 2.  The jury found that Freitag had proven (1) that she was "exposed to a sexually hostile work environment," (2) that CDCR "knew or should have known that she (emphasis added) was being subjected to inmate sexual misconduct," and (3) that CDCR "failed to take prompt and effective remedial action reasonably calculated to curb or stop the inmate sexual misconduct once it knew or should

9

have known that plaintiff (emphasis added) was being subjected to this inmate behavior." Id. at 1-2.

Overall, to the extent that plaintiffs' motion is based on the Freitag jury's findings and the Ninth Circuit's affirmance of those findings, those issues are not "identical" to the issues involved in this case. While issue (1) is phrased generally, referring to whether "there was" a sexually hostile work environment at Pelican Bay, the issue relevant to this case is whether Berndt and Hastings were subjected to a hostile work environment, which was not decided by the Freitag jury. Issues (2) and (3) relate to whether CDCR responded adequately to complaints of exhibitionist masturbation, but again, the issue relevant to this case is whether CDCR adequately responded to Berndt's and Hastings' complaints, a different issue than that decided by the Freitag jury.

Aside from the jury's findings, plaintiffs also seek to invoke collateral estoppel based on the injunctive relief granted by the district court after the jury trial, which first covered all employees at Pelican Bay, and then was extended to cover all CDCR employees. Specifically, the district court first entered an injunction barring CDCR from, among other things, "engaging in any employment practices, or taking any other personnel action, for the purpose or with the effect of maintaining a sexually hostile work environment at Pelican Bay State Prison." See Dkt. 618, Ex. 4 at 8. The district court then referred the matter to a special master to fashion a system-wide injunction, which the court adopted. See Dkt. 618, Ex. 5. Plaintiffs argue that these injunctions establish the existence of a sexually hostile work environment at Pelican Bay, and at all CDCR facilities. However, a closer look at the district court orders shows that the court did not make any express holdings to that effect.

In its first injunction order, the court noted CDCR's objection to any injunction that would benefit all female correctional officers, and its argument that "the evidence introduced at trial focused exclusively on the experiences of plaintiff and other female staff at Pelican Bay," and thus, "the court does not have the authority to issue a remedial order that extends beyond this single prison." Dkt. 618, Ex. 4 at 4. The court rejected CDCR's argument, finding that "injunctive relief may be granted on a 'class-wide' basis in

10

employment discrimination cases despite the absence" of a certified class.  Id. at 5.  Based on appellate court cases from the Ninth Circuit and other circuits, the court found that it had "discretion to devise remedies that both provide individual relief and effectuate the policies underlying" Title VII, and thus had "the authority to fashion an injunction that benefits not only plaintiff, but all female correctional officers and other staff members at Pelican Bay who have been or may be harmed by CDC's unlawful conduct."  Id. (emphasis added).  The district court's finding that an injunction would effectuate the underlying policies of Title VII, and exercise of its discretion to impose such an injunction, is not the same as an express finding that a sexually hostile work environment existed (or that CDCR failed to adequately respond to complaints of harassment), either at Pelican Bay or system-wide.

Overall, notwithstanding the injunctive relief, the court finds that the issues identified by plaintiffs were not "actually litigated" in Freitag.  In ordering injunctive relief, the district court merely took the jury's findings (that CDCR failed to adequately respond to Freitag's complaints at Pelican Bay) and exercised its discretion to issue a broad injunction to prevent further violations.  No express findings were made regarding the existence of a sexually hostile work environment to which all Pelican Bay employees were exposed, nor were any express findings made as to CDCR's response (or lack of response) to any complaints other than Freitag's.

Thus, even if the court were to apply offensive collateral estoppel against a state agency, plaintiffs' motion for summary judgment must be DENIED.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge

11