**United States District Court**
For the Northern District of California

1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7

8    MARTHA BERNDT, et al.,

              Plaintiffs,                    No. C 03-3174 PJH
9

10                  v.                       **ORDER DENYING PLAINTIFF LONGO'S
                                             MOTION FOR SUMMARY JUDGMENT**
11   CALIFORNIA DEPARTMENT OF
     CORRECTIONS, et al.,
12
              Defendants.
13   _____/

14        Plaintiff Estate of Judy Longo's[1] motion for summary judgment came on for hearing

15   before this court on August 6, 2014.  Plaintiff appeared through its counsel, Pamela Price.

16   Defendants Joseph McGrath and Dwight Winslow ("defendants") appeared through their

17   counsel, Lyn Harlan and Chris Young.  Having read the papers filed in conjunction with the

18   motion and carefully considered the arguments and the relevant legal authority, and good

19   cause appearing, the court hereby DENIES plaintiff's motion for summary judgment as

20   follows.

21                            **BACKGROUND**

22        This case arises out of allegations that female correctional officers and employees of

23   the California Department of Corrections and Rehabilitation ("CDCR") have been

24   continuously sexually harassed by inmates at CDCR institutions.  Plaintiffs claim that they

25   have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX")

26   _____

27        [1]Judy Longo was a named plaintiff in this case when it was filed on July 9, 2003, but has
     died during the pendency of this suit.  She is now represented in this action by her Estate.
28   However, for clarity, this order will refer to "plaintiff" and "Longo" interchangeably, and will
     describe the allegations originally made by Longo, and now asserted through her Estate, as
     "Longo's allegations."

United States District Court

For the Northern District of California

1    while working at CDCR institutions.

2    Specifically, the operative fifth amended complaint ("5AC") makes the following

3    allegations with regard to Judy Longo:

4    Longo began her employment with CDCR as a medical technical assistant ("MTA")

5    in 1990.  She was assigned to work at Pelican Bay State Prison in September 1992, and

6    worked there until her involuntary resignation in February 2003.  Specifically, Longo alleges

7    that she was forced to resign after refusing to administer medication to a "notoriously

8    abusive inmate exhibitionist masturbator," Goldwire Jackson.  5AC, ¶ 25.  Longo and other

9    employees had previously complained about Jackson, but Longo alleges that those

10   complaints were ignored, and that defendant McGrath (Warden at Pelican Bay)

11   "intentionally initiated Internal Affairs investigations against Longo because she spoke out

12   against inmate exhibitionist masturbation."  Id.  Longo was unable to find other

13   employment, and on March 17, 2009, she committed suicide "as a result of the trauma that

14   she suffered from her forced resignation."  Id., ¶ 4.

15   Longo's motion contains a more detailed factual background, part of which is based

16   on the declaration of Judy Longo filed in 2008 in support of class certification (Dkt. 241),

17   part of which is based on Longo's deposition testimony (Dkt. 615-3), and part of which is

18   based on the declaration of plaintiff Martha Berndt (Dkt. 620) filed in support of Longo's

19   motion for summary judgment (Dkt. 614).  Longo's motion notes that inmate Jackson was

20   cited for 25 IEX incidents in 1999, and had 80 reports of IEX from 1999 to 2005.  Dkt. 614

21   at 3.

22   In January 2002, Longo documented an incident that occurred when she

23   approached Jackson's cell to administer medication, and he "pulled out his penis and

24   exposed it to her."  Dkt. 614 at 4; Dkt. 241, ¶ 5.  Longo alleges that "no effective action"

25   was taken against Jackson as a result of the incident.  Longo also alleges that her requests

26   to have another MTA administer medication to Jackson were ignored.

27   On October 27, 2002, inmate Jackson complained of chest pains, and was

28   examined and cleared by an MTA (other than Longo) on "two separate occasions."  Dkt.

United States District Court
For the Northern District of California

614 at 5; Dkt. 241, ¶ 12.  During each incident, he stated that he was ready to "go off and kill" several staff members, including Longo.  These threats were documented on a form prepared by Sergeant Mark Ferguson, who also reported that Jackson made the same threats on October 23, 2002.  However, Longo alleges that her supervisors did not make her aware of these threats, nor did CDCR perform any type of "threat assessment."

Starting in January 2003, Longo alleges that McGrath and Winslow "tried to fire" her for "being rude and discourteous to inmate Jackson and refusing to give him medication on three occasions in January and February 2002."  Dkt. 614 at 5.  Longo alleges that Winslow "has ultimate authority for adverse actions."  Id.  Winslow and McGrath issued a "preliminary notice of adverse action" to Longo on January 10, 2003, and issued a "notice of adverse action" and placed Longo on administrative time off on February 11, 2003.

Longo alleges that, during the course of the adverse action, she spoke to the president of her union chapter (Rick Newton), and shared her concerns about inmate Jackson's sexual misconduct and homicidal threats, and about her unsuccessful attempts to have her supervisors "deal with these problems."  Dkt. 241, ¶ 14.  Newton documented Longo's concerns in a memorandum, which he sent to McGrath on February 13, 2003.  Id.  Longo also alleges that Newton spoke directly to both McGrath and Winslow regarding Longo's concerns.  Despite Newton's efforts, the adverse action was finalized, and on February 28, 2003, Longo "involuntarily retired . . . to avoid termination."  On March 17, 2009, Longo committed suicide.

In the 5AC, Longo asserted two causes of action (1) a sex discrimination claim under Title VII against CDCR, and (2) a section 1983 claim (equal protection) against individual defendants Teresa Schwartz (now Teresa Reagle), Joseph McGrath, and Dwight Winslow.  However, on August 27, 2013, the court granted judgment on the pleadings in favor of CDCR on Longo's first cause of action, based on her failure to exhaust administrative remedies.  See Dkt. 566.  Thus, Longo now has only one claim remaining – a section 1983 claim against Reagle, McGrath, and Winslow.  Longo now moves for summary judgment on the section 1983 claim as to only McGrath and Winslow.

3

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

A.    Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly

4

United States District Court

For the Northern District of California

1  supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

2       When deciding a summary judgment motion, a court must view the evidence in the

3  light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

4  Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

5  B.     Legal Analysis

6       To establish a claim under section 1983, plaintiff must show (1) that a right secured

7  by the Constitution or laws of the United States was violated and (2) that the alleged

8  violation was committed by a person acting under the color of state law.  See West v.

9  Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir.

10  1987).  Element (2) is undisputed, as both McGrath and Winslow were employees of the

11  state and acting in their official capacities.  As to element (1), plaintiff contends that the

12  relevant "right secured by the Constitution or laws of the United States" is the right of a

13  woman to be free from sexual harassment in her workplace.  See, e.g., Bator v. State of

14  Hawaii, 39 F.3d 1021, 1028 (9th Cir. 1994) ("severe or pervasive physical and verbal

15  harassment can be impermissible sex discrimination under the Equal Protection Clause,"

16  and "it was clearly established by 1988 that . . . adverse alteration of job responsibilities,

17  and other hostile treatment were impermissible sex discrimination in violation of the Equal

18  Protection Clause.").

19       The court agrees that state employees have a constitutional right to be free of sexual

20  harassment.  However, the Bator court made clear that "the Equal Protection Clause

21  proscribes purposeful discrimination by state actors, in the workplace and elsewhere,

22  based solely on an individual's membership in a protected class."  39 F.3d at 1027

23  (emphasis added).  The Bator court dealt with harassment claims being brought under two

24  theories – Title VII and equal protection.  In a footnote, it noted that both legal theories

25  "address the same wrong: discrimination," but explained that the two claims "differ"

26  because "a plaintiff must show intentional discrimination and state action for equal

27  protection claims (but not for Title VII claims)."  Id. at 1028, fn. 7.

28       The Bator court's "intentional discrimination" requirement for an equal protection

5

United States District Court

For the Northern District of California

1    claim operates in addition to the "personal participation" requirement applicable to all

2    section 1983 claims.  See, e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

3    ("Liability under section 1983 arises only upon a showing of personal participation by the

4    defendant.").  Under Ninth Circuit precedent, "[a] person deprives another of a

5    constitutional right, where that person 'does an affirmative act, participates in another's

6    affirmative acts, or omits to perform an act which [that person] is legally required to do that

7    causes the deprivation of which complaint is made.'" See, e.g., Hydrick v. Hunter, 500 F.3d

8    978, 988 (9th Cir. 2007) (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  The

9    Hydrick and Johnson courts went on to hold that the "requisite causal connection can be

10   established not only by some kind of direct personal participation in the deprivation, but

11   also by setting in motion a series of acts by others which the actor knows or reasonably

12   should know would cause others to inflict the constitutional injury."  Hydrick, 500 F.3d at

13   988 (citing Johnson, 588 F.2d at 743).  Thus, in order to establish that defendants violated

14   plaintiff's right to equal protection by subjecting her to sexual harassment, plaintiff must first

15   establish the elements of a sexual harassment claim, and then must show that defendants

16   either personally participated in the sexual harassment, or set in motion a series of acts by

17   others which defendants knew or reasonably should have known would cause sexual

18   harassment, and that defendants acted with the intent to discriminate against plaintiff.

19        To establish a claim for sexual harassment (or hostile work environment), a plaintiff

20   must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2)

21   that the conduct was based on gender, and (3) that the conduct was sufficiently severe or

22   pervasive to alter the conditions of employment and create an abusive work environment

23   from the perspective of a reasonable person.  See, e.g., Little v. Windermere Relocation,

24   Inc., 301 F.3d 958, 966 (9th Cir. 2001).

25        Plaintiff argues that her treatment by inmate Jackson constituted sexual harassment,

26   and that McGrath and Winslow "failed to respond" to her complaint, "ignored the

27   exhibitionist masturbation and dangerous threats to her life by inmate Jackson," and "took

28   adverse action against her for allegedly being 'rude and discourteous' to the inmate."  Dkt.

614 at 8.  Plaintiff then argues, more specifically, that "defendant Winslow has admitted

that he was the ultimate official who took adverse action against Officer Longo," and that

"defendant McGrath participated in the implementation of the adverse action by placing

Officer Longo on administrative time off, and he reviewed the adverse action."  Id. at 9.

Defendants argue that the adverse action was not motivated by "intentional

discrimination," and instead offer the following explanation:

> Winslow ordered the termination because after an investigation, the following
> allegations against Longo were sustained:  she failed to administer
> medication to Jackson, falsified the Medication Administration Record to
> conceal her wrongdoing, failed to report an allegation by inmate Taylor that
> excessive force was used on him, and was rude and discourteous to Jackson.

Dkt. 650 at 9.

Defendants further argue that "Longo presents no evidence whatsoever that

McGrath took any action because of discriminatory animus."

The court finds that there remains a genuine dispute as to the material fact of

whether defendants McGrath and Winslow acted with the intent to discriminate against

Longo based on her gender, and thus, plaintiff's motion for summary judgment is DENIED.

Defendants also raise the issue of qualified immunity, but given the court's finding that

plaintiff has not met her burden to establish entitlement to summary judgment, the court

does not address the qualified immunity argument here, and will address it in its order on

defendants' motion for summary judgment as to Longo's claims.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge

7