UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

    Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

_____/

No. C 03-3174 PJH

**ORDER DENYING PLAINTIFF CURRY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Sophia Curry's motion for summary judgment came on for hearing before this court on August 6, 2014. Plaintiff appeared through her counsel, Pamela Price. Defendant California Department of Corrections ("CDCR" or "defendant") appeared through its counsel, Lyn Harlan and Chris Young. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiff's motion for summary judgment as follows.

## BACKGROUND

This case arises out of allegations that female correctional officers and employees of CDCR have been continuously sexually harassed by inmates at CDCR institutions. Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX") while working at CDCR institutions.

Specifically, the operative fifth amended complaint ("5AC") makes the following allegations:

Curry began her employment with CDCR as a correctional officer in February 1987. At all relevant times, she was assigned to work at California State Prison, Sacramento

(referred to as "CSP-Sacramento").

On August 28, 2003, Curry (an African-American female) was working "her normal duty post . . . when she came upon inmate Owens, naked and masturbating." 5AC, ¶ 27. She ordered Owens to put on his clothes and "report to the office," and when he did so, Curry "counseled [him] regarding his inappropriate behavior." Id. Curry alleges that Owens' "demeanor and comments to her at that time were extremely hostile and insubordinate." Id. Based on this interaction, Curry wrote a "CDCR-115 Rules Violation Report" and indicated her belief that Owens was "a threat to all female staff." Id., ¶ 28. Despite this warning, Owens "was not placed in Administrative Segregation in accordance with CDCR policy and practice," and Curry's "suggestion that inmate Owens be scheduled for a psychological evaluation was also ignored." Id.

On September 3, 2003, Curry was allegedly "performing her duties doing the 'count' on the tier in her unit alone, because her supervisor, a Caucasian male, had 'redirected' her partner, a Latina female." 5AC, ¶ 29. Curry alleges that she "was often forced to work alone, even though her colleagues who were not African-American females were not put at the same risk." Id. While Curry was allegedly working alone on September 3, 2003, "inmate Owens attacked and violently assaulted [her] as she walked the tier." Id., ¶ 30. Owens "seized [her] from behind, placed her in a headlock and began cutting the back of her neck with the sharp end of a metal can lid." Id. "During the following struggle, inmate Owens hit her in the nose, and sliced it open with the feces-covered metal lid." Id. "Owens then grabbed her and threw her down the stairs." Id. Curry alleges that Owens' attack "was only stopped when the control booth officer shot at him with a rubber bullet." Id. Following the attack, "prison officials searched [Owens'] cell and uncovered several drawings of Curry in sexually explicit poses, of Owens stabbing her, and scenes of her worshiping him." Id., ¶ 31. Curry was not able to return to work after the attack.

In the 5AC, Curry asserts two causes of action (1) sex discrimination under Title VII against CDCR, and (2) "gender and race discrimination" under Title VII against CDCR. At the hearing, the court asked plaintiffs' counsel for clarification regarding the scope of each

2

of these claims.  Plaintiffs' counsel responded that claim (1) is intended to be a claim for harassment under Title VII based on gender, whereas claim (2) is intended to be a claim for harassment under Title VII based on mixed gender and race.

In support of her motion, plaintiff Curry filed a declaration containing some additional details regarding her claims.  Curry alleges that, on August 28, 2003, after witnessing Owens masturbating and verbally counseling him about it, she "wrote a 115 report about" that same day, and also "reported the incident to [her] supervisors and personally spoke with Lt. Banks about it that day."  Dkt. 621, ¶ 6.  Curry also alleges that "Lt. Banks was aware that inmate Owens was a 'serial masturbator.'"  Id.  Curry also alleges two other IEX incidents – one occurring on April 1, 2000 (involving inmate Robinson), and one occurring on September 3, 2003 (involving inmate Brown).  Id., ¶¶ 4, 8.

## DISCUSSION

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its

3

initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.   Legal Analysis

Plaintiff seeks a ruling that there is no triable issue of fact regarding "whether CDCR violated Title VII in its failure to address exhibitionist masturbation at CSP-Sacramento prior to inmate Owens' attack upon Officer Curry."

As a threshold matter, while plaintiff asserts two claims for harassment/hostile work environment under Title VII (one based on gender, and one based on mixed gender/race), her motion alleges only that "Officer Curry was subjected to a sexually hostile work environment," and does not mention any race-related allegations. Thus, the court construes plaintiff's motion as seeking summary judgment on only the 5AC's first cause of action.

To establish a claim for hostile work environment (or harassment) under Title VII, a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was

4

sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person. See, e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001). However, even if a plaintiff can show the existence of a hostile work environment to which she was subjected, the plaintiff must also establish that the employer is liable for the harassment that caused the hostile work environment to exist. Id.

In Freitag v. Ayers, the Ninth Circuit held that CDCR can be liable for inmate conduct if it "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct." 468 F.3d 528, 538 (9th Cir. 2006). The court explained that liability is "grounded not in the harassing act itself – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action." Id.

In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that she was subjected to a sexually hostile work environment because of inmate conduct, (2) that CDCR knew or should have known that plaintiff was being subjected to such inmate conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate conduct. Element (3) has been phrased in a number of different ways – sometimes as requiring an "immediate and appropriate" response, sometimes as requiring "immediate and/or corrective actions," and sometimes as requiring "corrective measures reasonably calculated to end the harassment," with reasonableness being measured by "the employer's ability to stop the harassment and the promptness of the response." See, e.g., Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968. Regardless of the specific phrasing used, it is clear that element (3) requires a showing that the employer acted unreasonably in its response to the harassment.

In her motion, plaintiff argues simply that "nothing was done at CSP-Sacramento prior to the attack by inmate Owens" and that "[t]here were no policies or procedures in place." Dkt. 622 at 4-5.

The court finds that there are triable issues of fact regarding CDCR's response to

5

the inmate behavior to which Curry was subjected.  CDCR's liability turns on whether it responded unreasonably in response to the alleged harassment of plaintiff by inmates, including whether it responded unreasonably to her warning that inmate Owens was "a threat to all female staff," and the court finds that question best left to a jury.  Accordingly, the court DENIES plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge