United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

Defendants.

_______________________________/

No. C 03-3174 PJH

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MORIN**

Defendant's motion for summary judgment as to the claims of plaintiff Kimberly Morin came on for hearing before this court on August 6, 2014. Plaintiff appeared through her counsel, Pamela Price. Defendant California Department of Corrections ("CDCR" or "defendant") appeared through its counsel, Lyn Harlan and Chris Young. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES defendant's motion for summary judgment as follows.

**BACKGROUND**

This case arises out of allegations that female correctional officers and employees of CDCR have been continuously sexually harassed by inmates at CDCR institutions. Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX") while working at CDCR institutions.

Specifically, the operative fifth amended complaint ("5AC") makes the following allegations with regard to plaintiff Morin.

Morin started working for CDCR as a Group Facilitator in February 2002, and "has been sexually harassed and assaulted by inmates on a consistent basis since she started

working at CSP-[Sacramento] in May 2003." 5AC, ¶ 35. Morin alleges that "[i]nmates are constantly exposing their genitals, masturbating, and ejaculating in treatment groups which she and/or her female co-workers are assigned to facilitate," and that the "inmates who engage in exhibitionist masturbation are allowed to choose to attend her group." Id. Morin alleges that "[s]he is always alone in the room with the inmates when these incidents occur." Id.

Morin alleges that, during 2009, she completed reports on at least seven inmates for IEX, but that "none of the reports . . . were accepted for prosecution by the District Attorney, even reports including threats of violence coupled with indecent exposure or exhibitionist masturbation." 5AC, ¶ 36.

More specifically, Morin alleges that "from October 2009 to March 2010, inmate Bloxton frequently masturbated and made inappropriate sexual comments to her while attending her group. At the time that he engaged in this sexual misconduct, he was supposed to be wearing the special exposure control jumpsuit, but he was not." 5AC, ¶ 37. Morin alleges that "inmates regularly are not required to wear the exposure control jumpsuit for the correct amount of time recommended in the Department Operations Manual." Id.

Morin alleges that she "has repeatedly asked for repeat offenders to be prohibited from coming to her group sessions, or that repeat offenders not be placed in her groups." 5AC, ¶ 38. However, Morin alleges that "her requests have been consistently denied," and that "repeat offenders have been allowed to return to her groups within the same week after she wrote them up for indecent exposure or exhibitionist masturbation incidents." Morin alleges that inmates who masturbate through their clothing are not removed, and that only inmates who expose themselves while masturbating are removed. Id.

Morin filed a declaration along with her opposition, which contains additional allegations. See Dkt. 685. Morin explains that she worked at CSP-Sacramento from May 2003 to June 2011, at which point she went on "medical leave, in part due to a physical injury [she] suffered at work, and in part due to the trauma, anxiety, and psychological impact on [her] from having worked in the unsupportive and hostile work environment" at

the prison. Id., ¶ 2. Morin resumed working in February 2014.

Morin's duties as a Group Facilitator include "facilitating and leading group sessions for male inmates," which "address subjects ranging from recreation and music listening to anger management, spirituality, and mental health issues." Dkt. 685, ¶ 7. The sessions "are not designed to provide psychological or therapeutic counseling," but rather are "primarily 'self-improvement' groups which CDCR is required to provide, but the inmates are not required to take or participate in" (other than inmates in the Psychiatric Services Unit, who are required to attend in order to obtain certain privileges). Id.

Morin then explains that she can recall the names of 15 inmates that she wrote up for IEX, but that they "represent only a fraction" of the total number of reports that she made. Dkt. 685, ¶ 12. Morin names inmate Bloxton as a "particularly offensive chronic offender," whom Morin wrote up at least four times. Id., ¶ 13. Morin alleges that, despite Bloxton having at least 20 prior IEX incidents in his file, he was assessed only 90 days of credit forfeiture and no loss of privileges, and it is unclear if the DA's office took any action after the case was referred. Id.

Morin alleges that, in September 2009, she reported that Bloxton was in her group "masturbating and making inappropriate sexual comments." Dkt. 685, ¶ 13. Morin points out that Bloxton was supposed to be wearing an exposure-control jumpsuit, but was not. Id. Morin alleges that there were other instances when an inmate was supposed to be wearing the jumpsuit but was not. Id.

Morin then discusses an incident in August 2008 when inmate Kazee began masturbating in a group session. Dkt. 685, ¶ 15. Morin points out that Kazee had nine prior IEX violations, but was assessed only 150 days of credit forfeiture, and the DA's office declined to prosecute. Id.

Morin alleges that she was "thoroughly dissatisfied with the manner in which CDCR responded to incidents of exhibitionist masturbation during [her] employment, including to the exhibitionist masturbation that inmates Bloxton and Kazee subjected [her] to." Dkt. 685, ¶ 15.

United States District Court
For the Northern District of California

Morin then alleges that, between 2003 and 2011, she "requested that repeat offenders be prohibited from coming to [her] group sessions for six months, or that repeat offenders not be placed in [her] groups." Dkt. 685, ¶ 17. Morin alleges that, "for the most part, these requests were denied," and that "many times, [she] had repeat offenders back in [her] groups within the same week" after writing them up for IEX. Id.

Morin alleges that she had suggested to her supervisors that repeat offenders be required to attend the Sex Offenders treatment group, and had also suggested that the exposure-control jumpsuit be modified to ensure that it was not drooping at the crotch – but both suggestions were rejected. Dkt. 685, ¶ 18.

Morin alleges that she complained to her union, her direct supervisors, custody officers and staff, the associate wardens, and the warden, but that each of her complaints "had either been denied or returned as meritless." Dkt. 685, ¶ 19. In particular, Morin complained to her supervisor after being sexually harassed by inmate Diesso (who sent Morin a "sexually explicit letter"), but was told that she was overreacting. Dkt. 685, ¶ 19. Morin alleges that, three weeks after being released into general population, he "assaulted someone else." Id.

In the 5AC, Morin asserts one cause of action: sex discrimination under Title VII against defendant CDCR.

## DISCUSSION

### A. Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome

United States District Court
For the Northern District of California

of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B. Legal Analysis

To establish a claim for hostile work environment (or harassment) under Title VII, a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person. See, e.g., Little v.

Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001). However, even if a plaintiff can show the existence of a hostile work environment to which she was subjected, the plaintiff must also establish that the employer is liable for the harassment that caused the hostile work environment to exist. Id.

In Freitag v. Ayers, the Ninth Circuit held that CDCR can be liable for inmate conduct if it "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct." 468 F.3d 528, 538 (9th Cir. 2006). The court explained that liability is "grounded not in the harassing act itself – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action." Id.

In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that she was subjected to a sexually hostile work environment because of inmate conduct, (2) that CDCR knew or should have known that plaintiff was being subjected to such inmate conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate conduct. Element (3) has been phrased in a number of different ways – sometimes as requiring an "immediate and appropriate" response, sometimes as requiring "immediate and/or corrective actions," and sometimes as requiring "corrective measures reasonably calculated to end the harassment," with reasonableness being measured by "the employer's ability to stop the harassment and the promptness of the response." See, e.g., Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968. Regardless of the specific phrasing used, it is clear that element (3) requires a showing that the employer acted unreasonably in its response to the harassment.

CDCR challenges plaintiff's Title VII claim on two grounds. First, CDCR argues that the behavior to which Morin was subjected was not sufficiently "severe or pervasive" to support a Title VII claim, because, among other things, "where she requested that the inmate not be returned to her group, Morin has no evidence that the inmates were ever returned to her group against her wishes." However, in focusing on its own response to Morin's IEX reports, CDCR is conflating the "severe or pervasive" prong with the issue of its

United States District Court
For the Northern District of California

own liability. CDCR concedes that Morin was subjected to at least thirteen IEX incidents, and the Ninth Circuit has held that even "a single incident of severe abuse can constitute a hostile work environment." Freitag, 468 F.3d at 540. Thus, the court finds that plaintiff has raised a triable issue of fact as to whether she was subjected to a hostile work environment based on gender.

CDCR's second challenge to plaintiff's claim is based on its argument that it responded reasonably to any harassment/hostile work environment that plaintiff faced, pointing out that "Morin has no evidence that her supervisors disregarded or ignored Morin's disciplinary reports," and again arguing that "Morin has no evidence that the inmates were ever returned to her group against her wishes."

In support of her claim, Morin argues that CDCR did not comply with its own IEX prevention procedures, including the use of an "exposure control jumpsuit" for certain inmates, including inmate Bloxton. Dkt. 685, ¶ 14. Morin also alleges that she suggested that "chronic masturbator and indecent exposure offenders be required to attend the Sex Offenders treatment group," and that "the indecent exposure jumpsuit be modified to ensure that it was not drooping at the crotch," but that both suggestions were denied. Id., ¶ 18. Morin also disputes CDCR's argument that all repeat offenders be excluded from her groups. Id., ¶ 17. Accordingly, the court finds that there remain triable issues of fact as to whether defendant responded reasonably to reports of IEX made by plaintiff Morin, and DENIES defendant's motion for summary judgment as to the Title VII claim asserted by plaintiff Morin.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge