UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

    Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.
_____/

No. C 03-3174 PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF CURRY**

Defendant's motion for summary judgment as to the claims of Sophia Curry came on for hearing before this court on August 6, 2014. Plaintiff appeared through her counsel, Pamela Price. Defendant California Department of Corrections ("CDCR" or "defendant") appeared through its counsel, Lyn Harlan and Chris Young. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment as follows.

## BACKGROUND

This case arises out of allegations that female correctional officers and employees of CDCR have been continuously sexually harassed by inmates at CDCR institutions. Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX") while working at CDCR institutions.

Specifically, the operative fifth amended complaint ("5AC") makes the following allegations:

Curry began her employment with CDCR as a correctional officer in February 1987. At all relevant times, she was assigned to work at California State Prison, Sacramento

(referred to as "CSP-Sacramento").

On August 28, 2003, Curry (an African-American female) was working "her normal duty post . . . when she came upon inmate Owens, naked and masturbating." 5AC, ¶ 27. She ordered Owens to put on his clothes and "report to the office," and when he did so, Curry "counseled [him] regarding his inappropriate behavior." Id. Curry alleges that Owens' "demeanor and comments to her at that time were extremely hostile and insubordinate." Id. Based on this interaction, Curry wrote a "CDCR-115 Rules Violation Report" and indicated her belief that Owens was "a threat to all female staff." Id., ¶ 28. Despite this warning, Owens "was not placed in Administrative Segregation in accordance with CDCR policy and practice," and Curry's "suggestion that inmate Owens be scheduled for a psychological evaluation was also ignored." Id.

On September 3, 2003, Curry was allegedly "performing her duties doing the 'count' on the tier in her unit alone, because her supervisor, a Caucasian male, had 'redirected' her partner, a Latina female." 5AC, ¶ 29. Curry alleges that she "was often forced to work alone, even though her colleagues who were not African-American females were not put at the same risk." Id. While Curry was allegedly working alone on September 3, 2003, "inmate Owens attacked and violently assaulted [her] as she walked the tier." Id., ¶ 30. Owens "seized [her] from behind, placed her in a headlock and began cutting the back of her neck with the sharp end of a metal can lid." Id. "During the following struggle, inmate Owens hit her in the nose, and sliced it open with the feces-covered metal lid." Id. "Owens then grabbed her and threw her down the stairs." Id. Curry alleges that Owens' attack "was only stopped when the control booth officer shot at him with a rubber bullet." Id. Following the attack, "prison officials searched [Owens'] cell and uncovered several drawings of Curry in sexually explicit poses, of Owens stabbing her, and scenes of her worshiping him." Id., ¶ 31. Curry was not able to return to work after the attack.

In the 5AC, Curry asserts two causes of action (1) sex discrimination under Title VII against CDCR, and (2) "gender and race discrimination" under Title VII against CDCR. At the hearing, the court asked plaintiffs' counsel for clarification regarding the scope of each

of these claims. Plaintiffs' counsel responded that claim (1) is intended to be a claim for harassment under Title VII based on gender, whereas claim (2) is intended to be a claim for harassment under Title VII based on mixed gender and race.

In a declaration filed in conjunction with her opposition brief, Curry provides additional details regarding her claims. See Dkt. 668. Curry alleges that, during her employment, she "was continuously exposed to inmate exhibitionist masturbation." Id., ¶ 3. She alleges that she witnessed "numerous incidents of exhibitionist masturbation," for which she does "not recall the specific inmates or the surrounding circumstances." Id.

Curry then describes the August 28, 2003 incident involving Owens. Dkt. 668, ¶ 6. After observing him masturbating, Curry ordered him to stop, to which he responded "I have been down 21 years and I have other violations in my file more serious than this one." Id. Curry alleges that he "appeared to be threatening [her] and completely disrespected [her] authority." Id. Curry alleges that, on the same day, she prepared a 115 report which "specifically stated [her] belief that inmate Owens was a threat to all female staff." Id., ¶ 7. Curry also alleges that she spoke with her supervisor (Lt. Banks) that same day, who told Curry "that he was going to move inmate Owens out of [her] block into administrative segregation." Id.

Curry alleges that, prior to September 3, she "had often protested to [her] supervisors that it was unsafe for [her] to work alone in the block." Dkt. 668, ¶ 10. Curry claims that her partner, Irma Reyes, was frequently "redirected" to other duties during their shift, which left Curry in the block alone. Id. Curry alleges that she and Reyes went to their supervisor's office (who is not referred to by name, but is referred to as the "associate warden"), to express their concerns about Reyes being redirected and Curry being left in the block alone. Id., ¶ 11. Curry claims that her supervisors (now plural) "denied that Reyes was being redirected." Id.

Curry then explains that, on September 3, she was performing an inmate count alone, because Reyes had been redirected. She makes clear that she did not start the count until after Officer Cook (in the control booth) had confirmed that the cells were

3

locked. Dkt. 668, ¶ 13. However, Cook let out some of the inmates to shower while Curry was still doing the count. Id., ¶ 14. Curry noticed this, but she was already locked inside. Curry alleges that she did not see Owens before he attacked her – while Owens was on the tier, "his back was turned towards" Curry. Curry walked past Owens in order to better get Cook's attention, but after Curry walked past, Owens put Curry in a choke hold, then punched her, and threw her down a flight of stairs. Id., ¶¶ 15-17. Owens also smeared feces on Curry's hair and body. Id., ¶ 17.[1]

Curry specifically states that neither Officer Reyes nor Officer Navarette were on the block while she was performing the count. Dkt. 668, ¶¶ 18-19. Curry further alleges that, after the attack, she heard Reyes say to Cook "I told you about watching her while she was on the tier." Id., ¶ 19.

Curry explains that she did not testify against Owens because she "refused to be placed in inmate Owens' presence ever again" because "he was clearly a sexual predator who . . . would have taken pleasure in seeing the stitches" on Curry's face (presumably, from the lacerations that resulted from the September 3 attack). Dkt. 668, ¶ 33.

Curry then adds allegations about a "long history of racial problems" at CSP-Sacramento, including officers being called the n-word, and one officer receiving "a silver coin with the letters 'KKK' on it." Dkt. 668, ¶¶ 25-26.

## DISCUSSION

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a

---

[1] In her declaration, Curry alleges that Owens "smeared feces on [her] hair and on [her] body," whereas in the complaint, Curry alleges that Owens cut her nose with a "feces-covered metal lid." Compare Dkt. 668, ¶ 17 with 5AC, ¶ 30. In her declaration supporting her own motion for summary judgment, Curry alleges that Owens both "punched [her] in the nose with a feces saturated can lid" and "smeared feces in [her] hair and on [her] body." Dkt. 621, ¶ 9.

4

matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.  Legal Analysis

Defendant seeks summary judgment as to both of plaintiff's Title VII claims, arguing that she cannot meet her burden to show that she faced a hostile work environment (based on either gender or mixed gender and race), and even if she could, she cannot establish defendant's liability.

To establish a claim for hostile work environment (or harassment) under Title VII, a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender (or mixed gender and race), and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person. See, e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001). However, even if a plaintiff can show the existence of a hostile work environment to which she was subjected, the plaintiff must also establish that the employer is liable for the harassment that caused the hostile work environment to exist.  Id.

In Freitag v. Ayers, the Ninth Circuit held that CDCR can be liable for inmate conduct if it "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct."  468 F.3d 528, 538 (9th Cir. 2006).  The court explained that liability is "grounded not in the harassing act itself – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action." Id.

In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that she was subjected to a sexually hostile work environment (or a sexually/racially hostile work environment) because of inmate conduct, (2) that CDCR knew or should have known that plaintiff was being subjected to such inmate conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate conduct.  Element (3) has been phrased in a number of different ways – sometimes as requiring an "immediate and appropriate" response, sometimes as requiring "immediate and/or corrective actions," and sometimes as requiring "corrective measures reasonably calculated to end the harassment," with

reasonableness being measured by "the employer's ability to stop the harassment and the promptness of the response." See, e.g., Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968. Regardless of the specific phrasing used, it is clear that element (3) requires a showing that the employer acted unreasonably in its response to the harassment.

The court will first analyze plaintiff's claim for hostile work environment based on gender, then will address plaintiff's claim for hostile work environment based on mixed gender and race, which overlaps with the first claim. Curry alleges that she was subjected to a sexually hostile work environment as a result of inmate exhibitionist masturbation, as well as inmate Owens' "threatening and disrespectful" behavior, and by Owens' physical attack on her. The court finds that plaintiff has indeed raised a triable issue of fact as to whether she was subjected to a hostile work environment based on gender.

Defendant attempts to avoid liability for any hostile work environment by arguing that it responded reasonably to each report of harassment made by Curry, including the August 28, 2003 report that inmate Owens was a "threat to all female staff." Defendant points out that Curry "admitted that Owens did not appear to be physically violent at that time," that she "could have, but did not, request that Owens be moved to administrative segregation," and that, even if Curry had requested that Owens be moved to administrative segregation, that "[m]oves to administrative segregation were difficult at that time because administrative segregation was overcrowded." However, the court finds that there remains a triable issue of fact as to whether defendant acted reasonably in response to any reports of harassment made by Curry. In particular, the court finds that there are a number of disputed facts surrounding the sequence of events on September 3, 2003, the day that Curry was attacked by Owens. Accordingly, the court DENIES defendant's motion for summary judgment as to plaintiff's Title VII claim for hostile work environment based on gender.

Plaintiff's claim for hostile work environment based on mixed gender and race partially overlaps with her first cause of action, but involves the additional allegations that the alleged hostile work environment was also based on race. Plaintiff's central allegation in the complaint is that her Latina partner was "repeatedly diverted" (including on the day of

7

Owens' attack, as alleged in her declaration), and that "other similarly situated non African American and male correctional officers were not endangered in this manner." 5AC, ¶ 83. However, plaintiff does not present any evidence showing that the alleged re-direction of her partner was based on race, nor does she identify any other examples of African-American and/or female officers who had their partners redirected. While plaintiff has alleged that her own partner was redirected, her speculation as to the reason for such redirection is insufficient to raise a triable issue as to whether any such redirection was based on race.

Curry now seeks to bolster her race-related allegations by pointing, in her opposition brief, to alleged harassment suffered by other African-American employees, none of which was targeted at Curry. While she does allege to have observed another African-American correctional officer (Raymond Hunter) being locked in with inmates without gun coverage, the other incidents that she describes (use of epithets, harassment of inmates with white sheets) appear to be pure hearsay, and cannot support Curry's own harassment claim. Overall, the court finds that Curry has not raised a triable issue of fact that CDCR's redirection of her partner (or any other part of its response to the August 28 attack) was due to her race, and thus, the court GRANTS summary judgment on Curry's claim for hostile work environment based on mixed gender and race. To the extent that the gender harassment portion of the third cause of action survives, it is duplicative of the first cause of action, and is accordingly dismissed.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge

8