**United States District Court**
For the Northern District of California

1

2

3                              UNITED STATES DISTRICT COURT

4                             NORTHERN DISTRICT OF CALIFORNIA

5

6

7    MARTHA BERNDT, et al.,

             Plaintiffs,                        No. C 03-3174 PJH
8
         v.                                     **ORDER GRANTING IN PART AND**
9                                               **DENYING IN PART DEFENDANTS'**
     CALIFORNIA DEPARTMENT OF                   **MOTION FOR SUMMARY JUDGMENT**
10   CORRECTIONS, et al.,                       **AS TO PLAINTIFF MOREIRA**

11           Defendants.
                                          /
12

13          Defendants' motion for summary judgment as to the claims of plaintiff Patricia

14   Moreira came on for hearing before this court on August 6, 2014.  Plaintiff appeared

15   through her counsel, Pamela Price.  Defendants California Department of Corrections

16   ("CDCR") and Teresa Reagle[1] (together, "defendants") appeared through their counsel, Lyn

17   Harlan and Chris Young.  Having read the papers filed in conjunction with the motion and

18   carefully considered the arguments and the relevant legal authority, and good cause

19   appearing, the court hereby GRANTS in part and DENIES in part defendants' motion for

20   summary judgment as follows.

21                                      **BACKGROUND**

22          This case arises out of allegations that female correctional officers and employees of

23   CDCR have been continuously sexually harassed by inmates at CDCR institutions.

24   Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation

25   (referred to as "IEX") while working at CDCR institutions.

26          Specifically, the operative fifth amended complaint ("5AC") makes the following

27

28          [1]Defendant Reagle (formerly Teresa Schwartz) was named in the complaint as Teresa
     Schwartz, but will be referred to as Teresa Reagle in this order.

United States District Court

For the Northern District of California

1  allegations with regard to plaintiff Moreira.

2  Moreira has worked for CDCR since April 2000, and is currently assigned to

3  California Medical Facility, Vacaville ("CMF-Vacaville" or "Vacaville").  Moreira alleges that,

4  in September 2003, she and other female correctional officers at Vacaville "complained to

5  CDCR supervisors and officials about inmate exhibitionist masturbation," but that "[d]espite

6  their complaints, CDCR refused or failed to address the pervasive problems."  5AC, ¶ 32.

7  Moreira further alleges that defendant Reagle (the Acting Warden and then Warden of

8  CMF-Vacaville) "failed to even investigate plaintiffs' complaints for approximately seven

9  months."  Id.  Regarding Reagle, the 5AC also alleges that she "knew that inmates

10  engaged in exhibitionist masturbation against female employees," but "deliberately refused"

11  to address the problem, and that "plaintiffs' status as women was a motivating factor in

12  [her] refusal to take action to stop the sexual harassment."  Id., ¶ 74-75.

13  The complaint itself does not contain any additional factual allegations regarding

14  Moreira, but more facts are contained in Moreira's declaration filed with her opposition brief

15  (Dkt. 689).  Moreira alleges that, "between January 1, 2011 [sic - this is likely intended to

16  read "2001"] and December 31, 2004, [she] witnessed numerous incidents of exhibitionist

17  masturbation."  Dkt. 689, ¶ 4.

18  The main incident mentioned by Moreira occurred on September 24, 2003, when

19  inmate Porter committed two acts of IEX, one at 4:30pm and another at 7:45pm.  Moreria

20  filed a 115 report, and verbally informed two co-workers and a supervisor.  Dkt. 689, ¶ 4.

21  After she reported the incident, Porter was "removed from his quarters," but when Moreira

22  returned to work the next day, Porter had been returned to his quarters.  Id., ¶ 6.  Moreira

23  was told that a supervisor (Lt. Kett) "did not think the exhibitionist masturbation incident was

24  'sufficiently severe' to warrant removal of the inmate."  Id.

25  Moreira filed a grievance against Lt. Kett, but he was not reprimanded or disciplined.

26  Dkt. 689, ¶ 7.  Moreira admits that Porter was "ultimately moved," but she claims that she

27  was not given any information about the 115 report that she filed, or whether Porter was

28  referred to the District Attorney's office for prosecution, and thus is "dissatisfied with the

United States District Court

For the Northern District of California

1  way in which CDCR handled this incident." Id.

2  Moreira alleges an another IEX incident occurred in 2005, where she filled out a 115

3  report, but when she followed up with a supervisor, he told Moreira that there was no

4  record of the 115 being made.  Dkt. 689, ¶ 8

5  Moreira then alleges that "there was another incident" where an inmate committed

6  IEX, though she "do[es] not recall the inmate's name or the exact date of the incident."  Dkt.

7  689, ¶ 5.  Moreira also alleges that she "witnessed at least fifteen (15) incidents of

8  exhibitionist masturbation for which [she] does not recall the specific names of the inmates

9  or the surrounding circumstances."  Id.  Moreira explains that "part of the reason [she does]

10  not recall the specific names is that going through the specific episodes of inmate IEX

11  makes [her] sick to [her] stomach."  Id.

12  Moreira alleges that, "sometime in 2011," she was "assaulted by inmate Foote," who

13  "gassed"[2] her and threatened her life.  Dkt. 689, ¶ 10.  Moreira alleges that her "supervisor

14  Sergeant Tillis did not want to move [Foote][3] from the section [she] was assigned to," but

15  instead, wanted to move Moreira.  Dkt. 689, ¶ 10.  Moreira alleges that she "did not feel

16  protected because the CDCR's priority seemed to be protecting the inmate."  Moreira

17  points out that Foote was ultimately denied parole, in part because Moreira "had worked to

18  get a restraining order on him and he was transferred to a different facility," without the help

19  of CDCR, which "did not assist" Moreira in obtaining the restraining order.  Id.

20  Regarding defendant Reagle, Moreira claims that she "failed to protect female staff"

21  and "did not adequately punish the inmates who were engaging in IEX."  Dkt. 689, ¶ 12.

22  In the 5AC, Moreira asserts two causes of action: (1) sex discrimination under Title

23  VII against defendant CDCR, and (2) violation of section 1983 (equal protection) against

24  defendant Reagle.

25

26  [2]Moreira's declaration does not explain what "gassing" is, but her opposition brief states
   that "gassing" is when inmates throw a liquid (usually urine, feces, semen, or a combination)
27  at a correctional officer."

28  [3]Moreira's declaration states that "Sergeant Tillis did not want to move Tillis from the
   section," but the court assumes that Moreira intended to refer to inmate Foote.

United States District Court

For the Northern District of California

1                           **DISCUSSION**

2    A.     Legal Standard

3           A party may move for summary judgment on a "claim or defense" or "part of . . . a

4    claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is

5    no genuine dispute as to any material fact and the moving party is entitled to judgment as a

6    matter of law. Id.

7           A party seeking summary judgment bears the initial burden of informing the court of

8    the basis for its motion, and of identifying those portions of the pleadings and discovery

9    responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp.

10    v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome

11    of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a

12    material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

13    verdict for the nonmoving party. Id.

14           Where the moving party will have the burden of proof at trial, it must affirmatively

15    demonstrate that no reasonable trier of fact could find other than for the moving party.

16    Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where

17    the nonmoving party will bear the burden of proof at trial, the moving party may carry its

18    initial burden of production by submitting admissible "evidence negating an essential

19    element of the nonmoving party's case," or by showing, "after suitable discovery," that the

20    "nonmoving party does not have enough evidence of an essential element of its claim or

21    defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co.,

22    Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S.

23    at 324-25 (moving party can prevail merely by pointing out to the district court that there is

24    an absence of evidence to support the nonmoving party's case).

25           When the moving party has carried its burden, the nonmoving party must respond

26    with specific facts, supported by admissible evidence, showing a genuine issue for trial.

27    Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of

28    only "some alleged factual dispute between the parties will not defeat an otherwise properly

United States District Court

For the Northern District of California

1  supported motion for summary judgment."  Anderson, 477 U.S. at 247-48.

2      When deciding a summary judgment motion, a court must view the evidence in the

3  light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

4  Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

5  B.      Legal Analysis

6          1.      Title VII claim

7      To establish a claim for hostile work environment (or harassment) under Title VII, a

8  plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual

9  conduct, (2) that the conduct was based on gender, and (3) that the conduct was

10 sufficiently severe or pervasive to alter the conditions of employment and create an abusive

11 work environment from the perspective of a reasonable person.  See, e.g., Little v.

12 Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001).  However, even if a

13 plaintiff can show the existence of a hostile work environment to which she was subjected,

14 the plaintiff must also establish that the employer is liable for the harassment that caused

15 the hostile work environment to exist.  Id.

16     In Freitag v. Ayers, the Ninth Circuit held that CDCR can be liable for inmate conduct

17 if it "either ratifies or acquiesces in the harassment by not taking immediate and/or

18 corrective action when it knew or should have known of the conduct."  468 F.3d 528, 538

19 (9th Cir. 2006).  The court explained that liability is "grounded not in the harassing act itself

20 – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the

21 harassment through its failure to take appropriate and reasonable responsive action."  Id.

22     In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that

23 she was subjected to a sexually hostile work environment because of inmate conduct, (2)

24 that CDCR knew or should have known that plaintiff was being subjected to such inmate

25 conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate

26 conduct.  Element (3) has been phrased in a number of different ways – sometimes as

27 requiring an "immediate and appropriate" response, sometimes as requiring "immediate

28 and/or corrective actions," and sometimes as requiring "corrective measures reasonably

United States District Court

For the Northern District of California

1   calculated to end the harassment," with reasonableness being measured by "the

2   employer's ability to stop the harassment and the promptness of the response." See, e.g.,

3   Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968.  Regardless of the specific phrasing

4   used, it is clear that element (3) requires a showing that the employer acted unreasonably

5   in its response to the harassment.

6         CDCR challenges plaintiff's Title VII claim on two grounds.  First, CDCR argues that

7   the behavior to which Moreira was subjected was not sufficiently "severe or pervasive" to

8   support a Title VII claim.  However, the court notes that the Ninth Circuit has held that even

9   "a single incident of severe abuse can constitute a hostile work environment." Freitag, 468

10  F.3d at 540.  Thus, the court finds that plaintiff has raised a triable issue of fact as to

11  whether she was subjected to a hostile work environment based on gender.

12        Second, CDCR argues that it responded reasonably to any harassment/hostile work

13  environment that plaintiff faced, pointing out that "[a]s soon as Moreira reported the

14  incidents [involving Porter] to her supervisors, the supervisors cuffed Porter, removed him

15  from Moreira's housing unit, and referred him to the DA for criminal prosecution."  CDCR

16  admits that "a different supervisor had returned Porter to her housing unit" when Moreira

17  returned to work, but it argues that "[w]hen Moreira complained to her supervisors about

18  this situation, they quickly responded by moving the inmate to administrative segregation."

19        Despite CDCR's arguments, the court finds that there remain triable issues of fact as

20  to whether defendant acted reasonably by, for instance, moving inmate Porter, then

21  returning him to Moreira's unit.  In addition, CDCR does not adequately address two other

22  incidents alleged by Moreira – the 2005 IEX incident where Moreira claims to have filed a

23  115 report, but no record of the report was found, and the 2011 "gassing" by inmate Foote.

24  Accordingly, the court DENIES defendants' motion for summary judgment as to the Title VII

25  claim asserted by plaintiff Moreira.

26        2.    Section 1983 claim

27        To establish a claim under section 1983, plaintiff must show (1) that a right secured

28  by the Constitution or laws of the United States was violated and (2) that the alleged

6

United States District Court

For the Northern District of California

1   violation was committed by a person acting under the color of state law.  See West v.

2   Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir.

3   1987).  Element (2) is undisputed, as all three defendants were employees of the state and

4   acting in their official capacities.  As to element (1), plaintiff contends that the relevant "right

5   secured by the Constitution or laws of the United States" is the right of a woman to be free

6   from sexual harassment in her workplace.  See, e.g., Bator v. State of Hawaii, 39 F.3d

7   1021, 1028 (9th Cir. 1994) ("severe or pervasive physical and verbal harassment can be

8   impermissible sex discrimination under the Equal Protection Clause," and "it was clearly

9   established by 1988 that . . . adverse alteration of job responsibilities, and other hostile

10  treatment were impermissible sex discrimination in violation of the Equal Protection

11  Clause.").

12      The court agrees that state employees have a constitutional right to be free of sexual

13  harassment.  However, the Bator court made clear that "the Equal Protection Clause

14  proscribes purposeful discrimination by state actors, in the workplace and elsewhere,

15  based solely on an individual's membership in a protected class."  39 F.3d at 1027

16  (emphasis added).  The Bator court dealt with harassment claims being brought under two

17  theories – Title VII and equal protection.  In a footnote, it noted that both legal theories

18  "address the same wrong: discrimination," but explained that the two claims "differ"

19  because "a plaintiff must show intentional discrimination and state action for equal

20  protection claims (but not for Title VII claims)."  Id. at 1028, fn. 7.

21      The Bator court's "intentional discrimination" requirement for an equal protection

22  claim operates in addition to the "personal participation" requirement applicable to all

23  section 1983 claims.  See, e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

24  ("Liability under section 1983 arises only upon a showing of personal participation by the

25  defendant.").  Under Ninth Circuit precedent, "[a] person deprives another of a

26  constitutional right, where that person 'does an affirmative act, participates in another's

27  affirmative acts, or omits to perform an act which [that person] is legally required to do that

28  causes the deprivation of which complaint is made.'"  See, e.g., Hydrick v. Hunter, 500 F.3d

7

United States District Court
For the Northern District of California

1  978, 988 (9th Cir. 2007) (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  The

2  Hydrick and Johnson courts went on to hold that the "requisite causal connection can be

3  established not only by some kind of direct personal participation in the deprivation, but

4  also by setting in motion a series of acts by others which the actor knows or reasonably

5  should know would cause others to inflict the constitutional injury."  Hydrick, 500 F.3d at

6  988 (citing Johnson, 588 F.2d at 743).  Thus, in order to establish that defendants violated

7  plaintiff's right to equal protection by subjecting her to sexual harassment, plaintiff must first

8  establish the elements of a sexual harassment claim, and then must show that defendants

9  either personally participated in the sexual harassment, or set in motion a series of acts by

10  others which defendants knew or reasonably should have known would cause sexual

11  harassment, and that defendants acted with the intent to discriminate against plaintiff.

12       As explained above, to establish a claim for sexual harassment (or hostile work

13  environment), a plaintiff must show (1) that she was subject to unwelcome verbal, physical,

14  or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was

15  sufficiently severe or pervasive to alter the conditions of employment and create an abusive

16  work environment from the perspective of a reasonable person.  See, e.g., Little, 301 F.3d

17  at 966.

18       The court has already found that, for purposes of opposing summary judgment,

19  plaintiff has sufficiently raised a triable issue of fact as to whether she was subjected to a

20  hostile work environment.  Thus, the next issue for the court to determine is whether

21  plaintiff has sufficiently shown that defendant Reagle personally participated in any

22  constitutional violation, and whether she acted with the intent to discriminate.

23       Plaintiff alleges in the complaint that Reagle (referred to as Schwartz) "intentionally,

24  willfully, and without justification, allowed [Moreira] to be exposed to habitual exhibitionist

25  masturbation," as she "knew that inmates engaged in exhibitionist masturbation, creating a

26  sexually hostile environment."  5AC, ¶ 74.  The 5AC further alleges that Reagle

27  "deliberately refused" to address the IEX problem, "turning a blind eye to the complaints

28  and concerns" of CDCR employees.  Id., ¶ 75.

1    However, Moreira's opposition brief fails to provide support for the complaint's

2 allegations against Reagle.  In fact, the opposition fails to allege any specific conduct by

3 Reagle, and Moreira's declaration offers only the conclusory statements that Reagle "failed

4 to protect female staff" and "did not adequately punish inmates who were engaging in IEX."

5 Dkt. 689, ¶ 12.

6    Overall, it appears that Moreira's theory of liability as to Reagle is based solely on

7 Reagle's status as Acting Warden and then Warden of Vacaville.  Moreira thus seeks to

8 impute any wrongdoing that occurred at Vacaville to Reagle, even in the absence of any

9 showing that Reagle took part in the alleged wrongdoing or was even aware of the specific

10 wrongdoing alleged by plaintiff.  While Reagle was aware of the problem of IEX generally

11 (based on the Freitag litigation), Moreira has not shown that Reagle was aware of and

12 failed to prevent the specific harassment to which Moreira herself was subjected.  Moreira

13 provides no evidence showing that she made complaints to Reagle, or that Reagle was

14 made aware of the complaints that she made to her direct supervisors.  Overall, to allow

15 Moreira to withstand summary judgment on her equal protection claim against Reagle

16 would essentially allow respondeat superior liability under section 1983, as it would hold

17 Reagle responsible for the conduct of her subordinates without any showing of personal

18 involvement. Accordingly, the court GRANTS defendants' motion for summary judgment as

19 to the section 1983 claim against Reagle.

20    Because the court has granted defendants' motion as to the section 1983 claim

21 asserted against Reagle, it need not address her qualified immunity defense.

22                              **CONCLUSION**

23    For the reasons stated above, defendants' motion is DENIED as to the Title VII claim

24 asserted against CDCR, and GRANTED as to the section 1983 claim asserted against

25 Reagle.

26    **IT IS SO ORDERED.**

27 Dated: September 16, 2014

28                                        _____
                                         PHYLLIS J. HAMILTON
                                         United States District Judge

9