UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

    Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

_____/

No. C 03-3174 PJH

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF CURRIE**

Defendant's motion for summary judgment as to the claims of plaintiff Karen Currie came on for hearing before this court on August 6, 2014. Plaintiff appeared through her counsel, Pamela Price. Defendant California Department of Corrections ("CDCR" or "defendant") appeared through its counsel, Lyn Harlan and Chris Young. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES defendant's motion for summary judgment as follows.

## BACKGROUND

This case arises out of allegations that female correctional officers and employees of CDCR have been continuously sexually harassed by inmates at CDCR institutions. Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX") while working at CDCR institutions.

The 5AC does not contain many allegations regarding Currie, but does state that she began her employment with CDCR as a correctional officer in 1984 and at all relevant times, she was assigned to work at California State Prison, Corcoran ("Corcoran"). Currie alleges that, "[t]hroughout her employment and as recently as January 2005, [her] reports

of inmates' indecent exposure, masturbation, and ejaculation were ignored by supervisors" at Corcoran.  5AC, ¶ 33.  Currie's "repeated requests to move inmates who sexually harassed female guards out of her building were denied."  Id.  Currie alleges that she and her co-workers "must continue to work in a sexually hostile work environment without recourse to their supervisors."  Id.

Currie filed a declaration along with her opposition, which contains additional allegations.  See Dkt. 684.  Currie describes 21 IEX incidents, involving 14 different inmates, and alleges that she wrote a disciplinary report after each incident.  Id., ¶¶ 3-23.  Currie further alleges that she requested that three inmates be removed from her direct view, and asked for another position.  Dkt. 684, ¶ 24.  Currie alleges that, every time she reported an incident, she "would get negative responses."  Id., ¶ 25.

For support, Currie cites to a memorandum that she wrote to the warden of Corcoran regarding her attempts to make complaints and requests regarding IEX.  In the memo, dated January 3, 2005, Currie alleges that she had written six or seven Rule Violation Reports about three or four inmates, and that she "requested to [her] supervisors to have these inmates moved to another area so that [she] would not have direct view," but that "no inmate was ever moved to another cell because of the many exposures that [she] had to endure."  See Dkt. 662-4 at 47.  Currie's memo then specifically discusses inmate Smith, for whom she requested a move, but was told that "there is nowhere else to move him."  Id.  Currie also alleges that Smith was going to be moved to a cell out of her direct view, but that the move was "reversed" by two of her supervisors on November 15, 2004.  Id.  When inmate Smith subjected Currie to IEX again on November 16, 2004 (the next day), she again complained to supervisors and requested that he be moved, but Smith was not moved, and instead, it was suggested that Currie "might need a job change to resolve the problem."  Id.  Currie agreed, but at the time that she wrote the letter to the warden (on January 3, 2005), "[n]o further action ha[d] been taken."  Id.

Currie then explains that she was able to "find[] an officer willing to trade positions," and did so, but "encountered problems with the same exhibitionist inmate in this new

2

assignment." Dkt. 684, ¶ 26.  In August 2005, Currie was able to bid into to a new position without inmate contact.  However, in early 2008, she bid back into a control booth position with inmate contact.  She has since "encountered at least one inmate who engages in exhibitionist masturbation," and when she asked that the inmate be moved, her immediate supervisor "initially refused." Dkt. 684, ¶ 28.  However, a more senior supervisor intervened, and the inmate was moved.

In the 5AC, Currie asserts one cause of action: sex discrimination under Title VII against defendant CDCR.

## DISCUSSION

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or

defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.  Legal Analysis

To establish a claim for hostile work environment (or harassment) under Title VII, a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person. See, e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001). However, even if a plaintiff can show the existence of a hostile work environment to which she was subjected, the plaintiff must also establish that the employer is liable for the harassment that caused the hostile work environment to exist. Id.

In Freitag v. Ayers, the Ninth Circuit held that CDCR can be liable for inmate conduct if it "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct." 468 F.3d 528, 538 (9th Cir. 2006). The court explained that liability is "grounded not in the harassing act itself – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action." Id.

4

In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that she was subjected to a sexually hostile work environment because of inmate conduct, (2) that CDCR knew or should have known that plaintiff was being subjected to such inmate conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate conduct.  Element (3) has been phrased in a number of different ways – sometimes as requiring an "immediate and appropriate" response, sometimes as requiring "immediate and/or corrective actions," and sometimes as requiring "corrective measures reasonably calculated to end the harassment," with reasonableness being measured by "the employer's ability to stop the harassment and the promptness of the response."  See, e.g., Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968.  Regardless of the specific phrasing used, it is clear that element (3) requires a showing that the employer acted unreasonably in its response to the harassment.

CDCR does not appear to dispute that Currie was subjected to a hostile work environment, as it argues only that its "responses to Currie's reports of inmate harassment preclude finding that it fostered a hostile work environment or failed to take reasonable actions under the circumstances."  Even if CDCR does intend to dispute the elements of a hostile work environment, the court finds that plaintiff has raised a triable issue of fact as to whether she was subjected to a hostile work environment based on gender.  Plaintiff has made an adequate showing that she was subjected to unwelcome verbal, physical, or visual conduct, that the conduct was based on gender, and that it was severe or pervasive.  The latter finding is informed by the Ninth Circuit's holding that even "a single incident of severe abuse can constitute a hostile work environment."  Freitag, 468 F.3d at 540.

As to the issue of defendant's liability, CDCR argues that the "crux of Currie's claim surround the CDCR's ability to quickly move three inmates (or her) in response to Currie's requests."  Regarding inmate Smith, CDCR points out that "Smith could not be moved due to his case factors and multiple designations, including mental issues, suicidal ideations, and being wheelchair bound."  CDCR argues that "Currie admits that, as soon as she requested a transfer, her supervisors were working in good faith at trying to get her a new

job assignment." However, she "felt the process was taking too long," and "wrote directly to the warden on January 3, 2005, requesting his intervention to get the job change." The warden did intervene, and "Currie received a job change offer the next day, which she accepted." CDCR then references two other inmates (Wade and Gallardo), and argues that, in each case, the inmate was moved within two days of Currie's request.

Despite CDCR's arguments, the court finds that there remain triable issues of fact as to whether CDCR responded reasonably to Currie's complaints about IEX, including her request that either herself or inmate Smith be moved. Regarding Smith, CDCR's claim that Currie "admits that, as soon as she requested a transfer, her supervisors were working in good faith at trying to get her a new job assignment" appears to mischaracterize her deposition testimony. In the cited portions of her deposition testimony, Currie admits only that a supervisor "made an effort . . . to have [her] have [her] job change effective as soon as possible," so that it became effective on January 10, 2005 – <u>after</u> the warden's intervention. <u>See</u> Dkt. 662-3 at 30. Currie was also asked in her deposition whether the January 10 job change "was the first position offered to [her] after [her] October 2004 request," to which she responded "yes." <u>Id.</u> Overall, given the delay between Currie's request and her actual job change (which occurred only after Currie wrote directly to the warden), the court finds that there remain triable issues of fact as to whether CDCR responded reasonably to Currie's request. In addition, Currie claims that she asked that another inmate be moved, but that her immediate supervisor "initially refused," and the inmate was moved only after a more senior supervisor intervened. Dkt. 684, ¶ 28. Thus, there remain triable issues of fact as to whether CDCR responded reasonably to Currie's complaints about IEX, and defendant's motion for summary judgment is DENIED as to the Title VII claim asserted by plaintiff Currie.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge

6