**United States District Court**
For the Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7

MARTHA BERNDT, et al.,

8
            Plaintiffs,                          No. C 03-3174 PJH

9
      v.                                         **ORDER GRANTING IN PART AND
10                                               DENYING IN PART DEFENDANTS'
CALIFORNIA DEPARTMENT OF                         MOTION FOR SUMMARY JUDGMENT
11   CORRECTIONS, et al.,                        AS TO PLAINTIFF LONGO**

12          Defendants.
     _____/

13

14          Defendants' motion for summary judgment as to the claims of plaintiff Estate of Judy

15   Longo[1] came on for hearing before this court on August 6, 2014.  Plaintiff appeared through

16   its counsel, Pamela Price.  Defendants Joseph McGrath, Teresa Reagle[2], and Dwight

17   Winslow ("defendants") appeared through their counsel, Lyn Harlan and Chris Young.

18   Having read the papers filed in conjunction with the motion and carefully considered the

19   arguments and the relevant legal authority, and good cause appearing, the court hereby

20   GRANTS in part and DENIES in part defendants' motion for summary judgment as follows.

21                                     **BACKGROUND**

22          This case arises out of allegations that female correctional officers and employees of

23   the California Department of Corrections and Rehabilitation ("CDCR") have been

24

25          [1]Judy Longo was a named plaintiff in this case when it was filed on July 9, 2003, but has
26   died during the pendency of this suit.  She is now represented in this action by her Estate.
     However, for clarity, this order will refer to "plaintiff" and "Longo" interchangeably, and will
27   describe the allegations originally made by Longo, and now asserted through her Estate, as
     "Longo's allegations."

28          [2]Defendant Reagle (formerly Teresa Schwartz) was named in the complaint as Teresa
     Schwartz, but will be referred to as Teresa Reagle in this order.

1   continuously sexually harassed by inmates at CDCR institutions.  Plaintiffs claim that they

2   have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX")

3   while working at CDCR institutions.

4         Specifically, the operative fifth amended complaint ("5AC") makes the following

5   allegations with regard to Judy Longo:

6         Longo began her employment with CDCR as a medical technical assistant ("MTA")

7   in 1990.  She was assigned to work at Pelican Bay State Prison in September 1992, and

8   worked there until her involuntary resignation in February 2003.  Specifically, Longo alleges

9   that she was forced to resign after refusing to administer medication to a "notoriously

10  abusive inmate exhibitionist masturbator," Goldwire Jackson.  5AC, ¶ 25.  Longo and other

11  employees had previously complained about Jackson, but Longo alleges that those

12  complaints were ignored, and that defendant McGrath (Warden at Pelican Bay)

13  "intentionally initiated Internal Affairs investigations against Longo because she spoke out

14  against inmate exhibitionist masturbation."  Id.  After her resignation, Longo was unable to

15  find other employment, and on March 17, 2009, she committed suicide "as a result of the

16  trauma that she suffered from her forced resignation."  Id., ¶ 4.

17        Longo's opposition brief (Dkt. 682) contains a more detailed factual background, part

18  of which is based on the declaration of Judy Longo filed in 2008 in support of class

19  certification (Dkt. 241), part of which is based on Longo's deposition testimony (Dkt. 615-3),

20  and part of which is based on the declaration of plaintiff Martha Berndt (Dkt. 620) filed in

21  support of Longo's motion for summary judgment (Dkt. 614).

22        In January 2002, Longo documented an incident that occurred when she

23  approached Jackson's cell to administer medication, and he "pulled out his penis and

24  exposed it to her."  Dkt. 682 at 4; Dkt. 241, ¶ 5.  Longo alleges that "no effective action"

25  was taken against Jackson as a result of the incident.  Longo also alleges that her requests

26  to have another MTA administer medication to Jackson were ignored.

27        On October 27, 2002, inmate Jackson complained of chest pains, and was

28  examined and cleared by an MTA (other than Longo) on "two separate occasions."  Dkt.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    682 at 5.  During each incident, he stated that he was ready to "go off and kill" several staff

2    members, including Longo.  These threats were documented on a form prepared by

3    Sergeant Mark Ferguson, who also reported that Jackson made the same threats on

4    October 23, 2002.  However, Longo alleges that her supervisors did not make her aware of

5    these threats, nor did CDCR perform any type of "threat assessment."

6         Starting in January 2003, Longo alleges that McGrath and Winslow "tried to fire" her

7    for "being rude and discourteous to inmate Jackson and refusing to give him medication on

8    three occasions in January and February 2002."  Dkt. 682 at 6.  Longo alleges that Winslow

9    "has ultimate authority for adverse actions."  Id.  Winslow and McGrath issued a

10   "preliminary notice of adverse action" to Longo on January 10, 2003, and issued a "notice

11   of adverse action" and placed Longo on administrative time off on February 11, 2003.

12        Longo alleges that, during the course of the adverse action, she spoke to the

13   president of her union chapter (Rick Newton), and shared her concerns about inmate

14   Jackson's sexual misconduct and homicidal threats, and about her unsuccessful attempts

15   to have her supervisors "deal with these problems."  Dkt. 241, ¶ 14.  Newton documented

16   Longo's concerns in a memorandum, which he sent to McGrath on February 13, 2003.  Id.

17   Longo also alleges that Newton spoke directly to both McGrath and Winslow regarding

18   Longo's concerns.  Despite Newton's efforts, the adverse action was finalized, and on

19   February 28, 2003, Longo "involuntarily retired . . . to avoid termination."  On March 17,

20   2009, Longo committed suicide.

21        In the 5AC, Longo asserted two causes of action (1) a sex discrimination claim

22   under Title VII against CDCR, and (2) a section 1983 claim (equal protection) against

23   individual defendants Joseph McGrath, Teresa Reagle, and Dwight Winslow.  However, on

24   August 27, 2013, the court granted judgment on the pleadings in favor of CDCR on Longo's

25   first cause of action, based on her failure to exhaust administrative remedies.  See Dkt.

26   566.  Thus, Longo now has only one claim remaining – a section 1983 claim against

27   McGrath, Reagle, and Winslow.  All three defendants now move for summary judgment on

28   Longo's claim.

3

United States District Court

For the Northern District of California

1

**DISCUSSION**

2   A.      Legal Standard

3          A party may move for summary judgment on a "claim or defense" or "part of . . . a

4   claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is

5   no genuine dispute as to any material fact and the moving party is entitled to judgment as a

6   matter of law.  Id.

7          A party seeking summary judgment bears the initial burden of informing the court of

8   the basis for its motion, and of identifying those portions of the pleadings and discovery

9   responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

10  v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome

11  of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a

12  material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

13  verdict for the nonmoving party.  Id.

14         Where the moving party will have the burden of proof at trial, it must affirmatively

15  demonstrate that no reasonable trier of fact could find other than for the moving party.

16  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

17  the nonmoving party will bear the burden of proof at trial, the moving party may carry its

18  initial burden of production by submitting admissible "evidence negating an essential

19  element of the nonmoving party's case," or by showing, "after suitable discovery," that the

20  "nonmoving party does not have enough evidence of an essential element of its claim or

21  defense to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co.,

22  Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S.

23  at 324-25 (moving party can prevail merely by pointing out to the district court that there is

24  an absence of evidence to support the nonmoving party's case).

25         When the moving party has carried its burden, the nonmoving party must respond

26  with specific facts, supported by admissible evidence, showing a genuine issue for trial.

27  Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence of

28  only "some alleged factual dispute between the parties will not defeat an otherwise properly

United States District Court

For the Northern District of California

1  supported motion for summary judgment."  Anderson, 477 U.S. at 247-48.

2      When deciding a summary judgment motion, a court must view the evidence in the

3  light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

4  Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

5  B.    Legal Analysis

6      To establish a claim under section 1983, plaintiff must show (1) that a right secured

7  by the Constitution or laws of the United States was violated and (2) that the alleged

8  violation was committed by a person acting under the color of state law.  See West v.

9  Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir.

10  1987).  Element (2) is undisputed, as all three defendants were employees of the state and

11  acting in their official capacities.  As to element (1), plaintiff contends that the relevant "right

12  secured by the Constitution or laws of the United States" is the right of a woman to be free

13  from sexual harassment in her workplace.  See, e.g., Bator v. State of Hawaii, 39 F.3d

14  1021, 1028 (9th Cir. 1994) ("severe or pervasive physical and verbal harassment can be

15  impermissible sex discrimination under the Equal Protection Clause," and "it was clearly

16  established by 1988 that . . . adverse alteration of job responsibilities, and other hostile

17  treatment were impermissible sex discrimination in violation of the Equal Protection

18  Clause.").

19      The court agrees that state employees have a constitutional right to be free of sexual

20  harassment.  However, the Bator court made clear that "the Equal Protection Clause

21  proscribes purposeful discrimination by state actors, in the workplace and elsewhere,

22  based solely on an individual's membership in a protected class."  39 F.3d at 1027

23  (emphasis added).  The Bator court dealt with harassment claims being brought under two

24  theories – Title VII and equal protection.  In a footnote, it noted that both legal theories

25  "address the same wrong: discrimination," but explained that the two claims "differ"

26  because "a plaintiff must show intentional discrimination and state action for equal

27  protection claims (but not for Title VII claims)."  Id. at 1028, fn. 7.

28      The Bator court's "intentional discrimination" requirement for an equal protection

United States District Court

For the Northern District of California

1  claim operates in addition to the "personal participation" requirement applicable to all

2  section 1983 claims.  See, e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

3  ("Liability under section 1983 arises only upon a showing of personal participation by the

4  defendant.").  Under Ninth Circuit precedent, "[a] person deprives another of a

5  constitutional right, where that person 'does an affirmative act, participates in another's

6  affirmative acts, or omits to perform an act which [that person] is legally required to do that

7  causes the deprivation of which complaint is made.'"  See, e.g., Hydrick v. Hunter, 500 F.3d

8  978, 988 (9th Cir. 2007) (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  The

9  Hydrick and Johnson courts went on to hold that the "requisite causal connection can be

10  established not only by some kind of direct personal participation in the deprivation, but

11  also by setting in motion a series of acts by others which the actor knows or reasonably

12  should know would cause others to inflict the constitutional injury."  Hydrick, 500 F.3d at

13  988 (citing Johnson, 588 F.2d at 743).  Thus, in order to establish that defendants violated

14  plaintiff's right to equal protection by subjecting her to sexual harassment, plaintiff must first

15  establish the elements of a sexual harassment claim, and then must show that defendants

16  either personally participated in the sexual harassment, or set in motion a series of acts by

17  others which defendants knew or reasonably should have known would cause sexual

18  harassment, and that defendants acted with the intent to discriminate against plaintiff.

19       To establish a claim for sexual harassment (or hostile work environment), a plaintiff

20  must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2)

21  that the conduct was based on gender, and (3) that the conduct was sufficiently severe or

22  pervasive to alter the conditions of employment and create an abusive work environment

23  from the perspective of a reasonable person.  See, e.g., Little v. Windermere Relocation,

24  Inc., 301 F.3d 958, 966 (9th Cir. 2001).

25       Plaintiff argues that her treatment by inmate Jackson constituted sexual harassment,

26  and that neither McGrath nor Winslow "responded to [her] complaints about inmate

27  Jackson's homicidal threats," and that they both took adverse action against her for

28  allegedly being "rude and discourteous" to inmate Jackson.  Dkt. 682 at 5-6.  Plaintiff points

United States District Court
For the Northern District of California

1  out that "Winslow has ultimate authority for adverse actions," and that according to

2  Winslow's testimony, "McGrath participated in the implementation of the adverse action by

3  placing [plaintiff] on administrative time off" and by reviewing the adverse action. Id. at 6,

4  15.

5          However, plaintiff does not make any specific allegations regarding defendant

6  Reagle.  The complaint alleges that defendant Reagle, among others, "used the internal

7  affairs process and internal affairs investigations . . . to retaliate against female officers,"

8  but does not allege that Reagle took any specific action involving Longo. See 5AC, ¶ 46

9  (emphasis added).  The complaint further alleges that, "[a]s an Associate Warden and

10 Chief Deputy Warden" at Pelican Bay, Reagle "knew that inmates engaged in exhibitionist

11 masturbation against female employees," and that she "intentionally protected inmate

12 Jackson by altering and minimizing disciplinary reports filed against him for exhibitionist

13 masturbation." Id., ¶ 74.  The complaint then alleges that Reagle "had the authority and

14 responsibility as Associate Warden [and] Chief Deputy Warden" to "address the

15 overwhelming problem of exhibitionist masturbation," but "refused to do so, turning a blind

16 eye to the complaints and concerns of the plaintiffs assigned to work" at Pelican Bay. Id., ¶

17 75.

18         However, plaintiff presents no evidence to support these allegations.  Indeed,

19 Longo's opposition brief alleges only that Reagle "retaliated against female employees who

20 complained about the problem" of inmate harassment, and that Reagle "initiated multiple

21 adverse actions against Officer Freitag," but does not allege that Reagle was involved in

22 any action involving Longo. See Dkt. 682 at 13 (emphasis added).  And to the extent that

23 plaintiff holds Reagle responsible for inmate behavior at Pelican Bay by virtue of her

24 position as Associate Warden and then Chief Deputy Warden, with responsibility over

25 plaintiff's supervisors, that argument is foreclosed by the law of this circuit, which is that a

26 "supervisor is only liable for constitutional violations of his subordinates if the supervisor

27 participated in or directed the violations, or knew of the violations and failed to act to

28 prevent them," and that "[t]here is no respondeat superior liability under section 1983."

7

United States District Court
For the Northern District of California

1   See, e.g., Taylor v. List, 880 F.2d at 1045.  Longo does not allege that she complained to

2   Reagle about any alleged harassment or about her direct supervisors' failure to respond to

3   complaints made to them, nor does she allege that Reagle was even aware of any such

4   complaints.  Plaintiff also fails to allege that Reagle was personally involved with the

5   adverse action taken against her.  Thus, plaintiff fails raise any triable issue of fact as to

6   whether Reagle is liable under section 1983, and defendants' motion for summary

7   judgment is GRANTED as to defendant Reagle.

8          In contrast, plaintiff does make specific allegations that both McGrath and Winslow

9   were aware of her complaints regarding the failure to warn her of inmate Jackson's threats,

10   and that both McGrath and Winslow were personally involved in the adverse action taken

11   against her.

12          In the complaint, Longo alleges that Winslow "was aware of, and intentionally

13   ignored and minimized" her "concerns and reports" of IEX, that he "refused to approve and

14   follow up on reports of [IEX] or threats made against plaintiff Longo by an inmate," and that

15   he "supervised and personally signed multiple adverse action findings against plaintiff

16   Longo."  5AC, ¶ 79.  Indeed, defendants admit that "[i]t is undisputed that Winslow

17   authorized the adverse action terminating Longo," and dispute only whether Winslow was

18   motivated by discriminatory animus.  See Dkt. 663 at 15.  However, the court finds that

19   plaintiff has raised a triable issue of fact as to whether Winslow violated section 1983 by

20   either failing to respond to her complaints and/or by taking adverse action against her, and

21   as to whether Winslow acted with the intent to discriminate based on gender.  However, if

22   Winslow can prevail on his qualified immunity defense (which is addressed below),

23   summary judgment in his favor may still be warranted.

24          As to McGrath, plaintiff alleges in her opposition brief that McGrath was informed of

25   Longo's complaints about inmate Jackson by union president Rick Newton, but that

26   McGrath failed to respond to the complaints.  Dkt. 682 at 5.  Plaintiff also alleges that the

27   preliminary notice of adverse action was initiated by both McGrath and Winslow.  Id. at 6.

28   While defendants dispute both of those allegations, and argue that McGrath was not

United States District Court
For the Northern District of California

1   motivated by discriminatory animus, the court finds that plaintiff has raised a triable issue of

2   fact as to whether McGrath violated section 1983 by either failing to respond to her

3   complaint and/or by taking adverse action against her, and as to whether McGrath acted

4   with the intent to discriminate based on gender.  However, before ruling on defendants'

5   motion as to McGrath and Winslow, the court must first address defendants' qualified

6   immunity argument.

7           The defense of qualified immunity protects "government officials . . . from liability for

8   civil damages insofar as their conduct does not violate clearly established statutory or

9   constitutional rights of which a reasonable person would have known."  Harlow v.

10  Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity "provides ample

11  protection to all but the plainly incompetent or those who knowingly violate the law";

12  defendants can have a reasonable, but mistaken, belief about the facts or about what the

13  law requires in any given situation.  Malley v. Briggs, 475 U.S. 335, 342 (1986).  "Therefore,

14  regardless of whether the constitutional violation occurred, the [official] should prevail if the

15  right asserted by the plaintiff was not 'clearly established' or the [official] could have

16  reasonably believed that his particular conduct was lawful."  Romero v. Kitsap County, 931

17  F.2d 624, 627 (9th Cir. 1991).  Qualified immunity is particularly amenable to summary

18  judgment adjudication.  Martin v. City of Oceanside, 360 F.3d 1078, 1081 (9th Cir. 2004).

19          A court considering a claim of qualified immunity must determine whether the

20  plaintiff has alleged the deprivation of an actual constitutional right and whether such right

21  was clearly established such that it would be clear to a reasonable officer that his conduct

22  was unlawful in the situation he confronted.  See Pearson v. Callahan, 555 U.S. 225, 235-

23  36 (2009) (overruling the sequence of the two-part test that required determination of a

24  deprivation first and then whether such right was clearly established, as required by

25  Saucier v. Katz, 533 U.S. 194 (2001)).  The court may exercise its discretion in deciding

26  which prong to address first, in light of the particular circumstances of each case.  Id.

27  (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer

28  mandatory).

United States District Court

For the Northern District of California

1    Regarding the first prong, the threshold question must be: Taken in the light most

2  favorable to the party asserting the injury, do the facts alleged show that the defendant's

3  conduct violated a constitutional right?  Saucier, 533 U.S. at 201; see Martin, 360 F.3d at

4  1082 (in performing the initial inquiry, court is obligated to accept plaintiff's facts as alleged,

5  but not necessarily his application of law to the facts; the issue is not whether a claim is

6  stated for a violation of plaintiff's constitutional rights, but rather whether the defendants

7  actually violated a constitutional right) (emphasis in original).  "If no constitutional right

8  would have been violated were the allegations established, there is no necessity for further

9  inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

10    The inquiry of whether a constitutional right was clearly established must be

11  undertaken in light of the specific context of the case, not as a broad general proposition.

12  Saucier, 533 U.S. at 202.  The relevant, dispositive inquiry in determining whether a right is

13  clearly established is whether it would be clear to a reasonable defendant that his conduct

14  was unlawful in the situation he confronted.  Id.; *see, e.g.*, Pearson,  555 U.S. at 243-44

15  (concluding that officers were entitled to qualified immunity because their conduct was not

16  clearly established as unconstitutional as the "consent-once-removed" doctrine, upon which

17  the officers relied, had been generally accepted by the lower courts even though not yet

18  ruled upon by their own federal circuit).  If the law did not put the defendant on notice that

19  his conduct would be clearly unlawful, summary judgment based on qualified immunity is

20  appropriate.  Saucier, 533 U.S. at 202.

21    "If there are genuine issues of material fact in issue relating to the historical facts of

22  what the official knew or what he did, it is clear that these are questions of fact for the jury

23  to determine."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th

24  Cir. 1995).  If the essential facts are undisputed, or no reasonable juror could find

25  otherwise, however, then the question of qualified immunity is appropriately one for the

26  court. Id. at 1100 (citing Hunter v. Bryant, 502 U.S. 224, 227-28 (1991)).  Or the court may

27  grant qualified immunity by viewing all of the facts most favorably to plaintiff and then

28  finding that under those facts the defendants could reasonably believe they were not

violating the law.  See, e.g., Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003);
Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1051-53 (9th Cir. 2002).

   Because the court has already granted the motion for summary judgment as to
Reagle, the court does not reach her qualified immunity argument.  As to McGrath and
Winslow, the court finds that the qualified immunity defense must be rejected under either
prong.  On the first prong, the court finds that, taken in the light most favorable to the party
asserting the injury, the facts alleged do show that the defendants' conduct violated an
actual constitutional right.  And as to the second prong, as stated above, the court finds
that there are genuine issues of material fact as to whether McGrath and/or Winslow
violated section 1983 by either failing to respond to Longo's complaints and/or by taking
adverse action against her with the intent to discriminate based on gender.  If McGrath
and/or Winslow acted with the intent to discriminate, they could not reasonably have
believed that their conduct was lawful.  Accordingly, as to McGrath and Winslow,
defendants' motion for summary judgment is DENIED.

   **IT IS SO ORDERED.**

Dated: September 16, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge