UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTHA BERNDT, et al.,

    Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

_____/

No. C 03-3174 PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF HASTINGS**

Defendants' motion for summary judgment as to the claims of plaintiff Marta Hastings came on for hearing before this court on August 6, 2014. Plaintiff appeared through her counsel, Pamela Price. Defendants California Department of Corrections ("CDCR"), Joseph McGrath and Teresa Reagle[1] (together, "defendants") appeared through their counsel, Lyn Harlan and Chris Young. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS in part and DENIES in part defendants' motion for summary judgment as follows.

**BACKGROUND**

This case arises out of allegations that female correctional officers and employees of CDCR have been continuously sexually harassed by inmates at CDCR institutions. Plaintiffs claim that they have been exposed to repeated inmate exhibitionist masturbation (referred to as "IEX") while working at CDCR institutions.

Specifically, the operative fifth amended complaint ("5AC") makes the following

---

[1] Defendant Reagle (formerly Teresa Schwartz) was named in the complaint as Teresa Schwartz, but will be referred to as Teresa Reagle in this order.

allegations with regard to plaintiff Hastings.

Hastings worked at Pelican Bay State Prison from November 1989 to January 2005. Hastings alleges that, in August 2003, she "attempted to report inmate Thomas' exhibitionist masturbation," and "became so emotionally disturbed that she was forced to leave her employment for the day." 5AC, ¶ 26. Hastings alleges that her "complaints were ignored and two more exhibitionist masturbators were placed in her unit." Id. Hastings further alleges that defendants McGrath and Reagle "failed to follow up on [her] reports of exhibitionist masturbation, and further failed to take any action to protect her from known exhibitionist masturbation." Id.

The complaint itself does not contain any additional factual allegations regarding Hastings, but more facts are contained in Hastings' declaration filed with her opposition brief (Dkt. 679). Hastings alleges that she "witnessed multiple instances of exhibitionist masturbation" during her time as a correctional officer, starting with an August 20, 1999 incident involving inmate Ortiz. Dkt. 679, ¶ 4. Hastings alleges that she verbally counseled Ortiz, but does not allege that she prepared a written report in response to the incident.

Hastings then mentions a September 10, 1999 IEX incident involving inmate Hernandez. Hastings alleges that she prepared a 115 report after this incident, and specifically alleges that she "noted that [she] had previously been subjected to incidents of exhibitionist masturbation by this inmate on July 10 and July 22, 1999." Dkt. 679, ¶ 6. Hastings alleges that, to her knowledge, "no action was ever taken against" Hernandez.

Hastings then alleges that, on June 23, 2000, she was subjected to IEX by inmate White. Dkt. 679, ¶ 7. Hastings alleges that she prepared a 115 report and a 837 report, which further "noted that he had received numerous disciplinaries for masturbating toward female staff, including two incidents in 1998, and a prior incident toward [Hastings] on or about February 17, 2000." Id. Hastings alleges that, to her knowledge, "no action was taken against inmate White for his inappropriate conduct toward" her.

Hastings then alleges that, on October 12, 2002, she witnessed inmate Alander

"standing in front of his sink in the nude with his cell light on, taking a bird bath[2]." Dkt. 679, ¶ 9. Hastings alleges that she called to the cell asking the inmate to identify himself, which he did, and then "continued to expose himself to [Hastings] while fondling his genitals and occasionally looking straight at" her. Id. Hastings then asked another correctional officer (CO Horn) to question Alander, which caused the inmate to become "belligerent and verbally abusive, stating 'You fucking bitch. You know you like what you see. You cunt. You whore. You can't stop me from washing my nuts. You whore.'" Id., ¶ 10. Hastings alleges that she prepared 115 and 837 reports in response to this incident, but that, to her knowledge, "no action was ever taken against this inmate for his inappropriate conduct and comments toward" her. Id.

Five days later, on October 17, 2002, Hastings again witnessed inmate Alander "nude at the sink, taking a bird bath with his cell light on." Dkt. 679, ¶ 11. Hastings alleges that he "looked straight at [her] while stroking his penis with both hands." Id. Hastings alleges that she prepared a 837 report in response to the incident.

On the same day (October 17), Hastings witnessed inmate Jones "lying on his bed . . . completely nude and [] staring directly at [her] with his penis in his right hand." Dkt. 679, ¶ 12. Hastings alleges that "Jones was then standing at the front of his cell masturbating." Id. Hastings prepared a 837 report in response to this incident.

On February 3, 2003, Hastings witnessed inmate Brewer "standing in front of his cell door, fully nude, and shaking his penis with both hands, while staring straight at" her. Dkt. 679, ¶ 13. Hastings alleges that inmate Brewer "continued to masturbate while watching [her] in the control booth." Id. Hastings prepared a 837 report in response to this incident.

On August 11, 2003, Hastings alleges that she witnessed inmate Thomas "masturbating while watching [her] at [her] desk." Dkt. 679, ¶ 14. Hastings alleges that, later, when she was "scanning Thomas' outgoing mail, [she] saw that he had written 'They don't like the fact that their female staff look out for me somewhat. They act like I was

---

[2]Hastings' declaration does not explain what she means by the term "bird bath," but the court believes she is referring to the washing of genitals in a sink.

3

doing something illegal.'" Id. Hastings "perceived this statement as him justifying his sexual behavior toward female staff." Id. Hastings prepared a 837 report in response to this incident.

On October 13, 2003, Hastings witnessed inmate Goodwin "masturbating while staring at" her. Dkt. 679, ¶ 15. Hastings prepared a 837 report, and noted that Goodwin "had more than fourteen documented prior incidents of exhibitionist masturbation." Id. Hastings alleges that she was "so upset and offended by this incident that [she] went to the prison infirmary and took off work due to stress." Id.

On January 8, 2004, Hastings alleges that inmate Kirk was watching her in the control booth and "pouring oil on his erect penis and stroking it as he watched" her. Dkt. 679, ¶ 16. Hastings alleges that she approached him and told him to stop, but that he ignored her and continued masturbating. Hastings then told him that he would receive a 115 report, but he continued.

Hastings then alleges that these incidents, including "many other incidents" for which she "does not recall the specific inmates or the surrounding circumstances," had an "extremely adverse effect" on her health. Hastings alleges that, following the October 12, 2002 incident with inmate Alander, she "was taken from Pelican Bay by ambulance to a hospital emergency ward because [her] blood pressure had risen to a dangerously high level." Dkt. 679, ¶ 18.

Hastings further alleges that, at the beginning of her career, she would prepare a 115 report after every IEX incident. However, she eventually "stopped preparing 115 reports because it did not make any sense to do so," as the inmates "were never punished or reprimanded." Dkt. 679, ¶ 19.

Hastings then alleges that she suggested possible solutions to deal with IEX, including installing a one-way film over the windows of the control booth, and while her "superiors thought it was a good idea . . . no one acted on it." Dkt. 679, ¶ 22.

In the 5AC, Hastings asserts two causes of action: (1) sex discrimination under Title VII against defendant CDCR, and (2) violation of section 1983 (equal protection) against

4

defendants McGrath (Warden at Pelican Bay) and Reagle (Chief Deputy Warden at Pelican Bay).

**DISCUSSION**

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial.

Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.   Legal Analysis

   1.   Title VII claim

To establish a claim for hostile work environment (or harassment) under Title VII, a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person.  See, e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2001).  However, even if a plaintiff can show the existence of a hostile work environment to which she was subjected, the plaintiff must also establish that the employer is liable for the harassment that caused the hostile work environment to exist.  Id.

In Freitag v. Ayers, the Ninth Circuit held that CDCR can be liable for inmate conduct if it "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct."  468 F.3d 528, 538 (9th Cir. 2006).  The court explained that liability is "grounded not in the harassing act itself – i.e., inmate misconduct – but rather in the employer's 'negligence and ratification' of the harassment through its failure to take appropriate and reasonable responsive action."  Id.

In other words, for CDCR to be liable under Title VII, a plaintiff must show (1) that she was subjected to a sexually hostile work environment because of inmate conduct, (2) that CDCR knew or should have known that plaintiff was being subjected to such inmate conduct, and (3) CDCR failed to respond appropriately and reasonably to the inmate conduct.  Element (3) has been phrased in a number of different ways – sometimes as

6

requiring an "immediate and appropriate" response, sometimes as requiring "immediate and/or corrective actions," and sometimes as requiring "corrective measures reasonably calculated to end the harassment," with reasonableness being measured by "the employer's ability to stop the harassment and the promptness of the response." See, e.g., Freitag, 468 F.3d at 538-40; Little, 301 F.3d at 968.  Regardless of the specific phrasing used, it is clear that element (3) requires a showing that the employer acted unreasonably in its response to the harassment.

As a threshold matter, CDCR argues that any IEX incidents occurring prior to September 12, 2002 (300 days before the filing of the complaint) are time-barred. However, the court finds that plaintiff has convincingly argued that the "continuing violation" doctrine applies in this case, which allows the inclusion of otherwise time-barred incidents as long as they are deemed part of "one unlawful employment practice giving rise to a single claim." See, e.g., National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 118 (2002).  Thus, the court will consider all IEX incidents alleged by plaintiff to be part of her Title VII claim.

CDCR argues in its motion that plaintiff "cannot establish a hostile work environment or that the CDCR failed to take reasonable actions under the circumstances."  As to the first part of that argument, it is unclear on what basis CDCR argues that plaintiff "cannot establish a hostile work environment," as its motion does not specifically challenge whether (1) plaintiff was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person.  The court finds that plaintiff has shown that she was subject to unwelcome conduct and that the conduct was based on gender, and further notes that the Ninth Circuit has held that even "a single incident of severe abuse can constitute a hostile work environment." Freitag, 468 F.3d at 540.  Thus, the court finds that plaintiff has raised a triable issue of fact as to whether she was subjected to a hostile work environment based on gender.

7

As to the issue of defendant's liability, CDCR argues that it took a number of measures to address the issue of IEX at Pelican Bay, including the treatment of IEX incidents as "Serious Rule Violations," the encouragement of referrals to the district attorney's office for prosecution of chronic IEX offenders, the requirement that all IEX incidents be reported, the issuance of various memos making clear that "IEX directed at staff would 'not be tolerated' and would be a disciplinary offense," the appointment of a Special Master to develop a remedial plan after the Freitag verdict in 2003, and the proposal of a Pilot Program in 2004 to limit IEX opportunities and minimize its impat on staff.  See Dkt. 666-1 at 1-5.  With regard to Hastings specifically, CDCR argues that "for each incident Hastings wrote up, the CDCR took the report seriously and the inmate was found guilty and disciplined."  CDCR further argues that Hastings knew that correctional officers "could request to have inmates moved from their unit, but does not remember ever requesting that an inmate be moved from her unit."

Despite CDCR's arguments, given the number of complaints lodged by plaintiff and her contention that either no action or inappropriate action was taken as a result, the court finds that there remains a triable issue of fact as to whether defendant acted reasonably in response to the reports of harassment made by Hastings.   Accordingly, the court DENIES defendants' motion for summary judgment as to the Title VII claim asserted by plaintiff Hastings.

2.       Section 1983 claim

To establish a claim under section 1983, plaintiff must show (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).  Element (2) is undisputed, as all three defendants were employees of the state and acting in their official capacities.  As to element (1), plaintiff contends that the relevant "right secured by the Constitution or laws of the United States" is the right of a woman to be free from sexual harassment in her workplace.  See, e.g., Bator v. State of Hawaii, 39 F.3d

1021, 1028 (9th Cir. 1994) ("severe or pervasive physical and verbal harassment can be impermissible sex discrimination under the Equal Protection Clause," and "it was clearly established by 1988 that . . . adverse alteration of job responsibilities, and other hostile treatment were impermissible sex discrimination in violation of the Equal Protection Clause.").

The court agrees that state employees have a constitutional right to be free of sexual harassment. However, the Bator court made clear that "the Equal Protection Clause proscribes purposeful discrimination by state actors, in the workplace and elsewhere, based solely on an individual's membership in a protected class." 39 F.3d at 1027 (emphasis added). The Bator court dealt with harassment claims being brought under two theories – Title VII and equal protection. In a footnote, it noted that both legal theories "address the same wrong: discrimination," but explained that the two claims "differ" because "a plaintiff must show intentional discrimination and state action for equal protection claims (but not for Title VII claims)." Id. at 1028, fn. 7.

The Bator court's "intentional discrimination" requirement for an equal protection claim operates in addition to the "personal participation" requirement applicable to all section 1983 claims. See, e.g., Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). Under Ninth Circuit precedent, "[a] person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" See, e.g., Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). The Hydrick and Johnson courts went on to hold that the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Hydrick, 500 F.3d at 988 (citing Johnson, 588 F.2d at 743). Thus, in order to establish that defendants violated

9

plaintiff's right to equal protection by subjecting her to sexual harassment, plaintiff must first establish the elements of a sexual harassment claim, and then must show that defendants either personally participated in the sexual harassment, or set in motion a series of acts by others which defendants knew or reasonably should have known would cause sexual harassment, and that defendants acted with the intent to discriminate against plaintiff.

As explained above, to establish a claim for sexual harassment (or hostile work environment), a plaintiff must show (1) that she was subject to unwelcome verbal, physical, or visual conduct, (2) that the conduct was based on gender, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment from the perspective of a reasonable person. See, e.g., Little, 301 F.3d at 966.

The court has already found that, for purposes of opposing summary judgment, plaintiff has sufficiently raised a triable issue of fact as to whether she was subjected to a hostile work environment. Thus, the next issue for the court to determine is whether plaintiff has sufficiently shown that defendants McGrath and/or Reagle personally participated in any constitutional violation, and whether they acted with the intent to discriminate.

As to defendant McGrath, plaintiff alleges in the complaint that he "willfully subjected" her "to a sexually hostile work environment by refusing to address exhibitionist masturbation at Pelican Bay where he knew that inmates targeted female employees for sexual harassment." 5AC, ¶ 76. The 5AC further alleges that McGrath "had the authority and responsibility to address the overwhelming problem of exhibitionist masturbation," and that "[n]otwithstanding his knowledge of the sexually hostile work environment, [he] refused to implement any of the recommendations proposed by the [OIG] in July 2000." Id. Finally, the 5AC alleges that McGrath "actively tried to minimize and conceal the impact of exhibitionist masturbation on female employees" and "deliberately and intentionally tried to make it appear as if plaintiffs were exaggerating and fabricating reports of inmate exhibitionist masturbation." Id., ¶ 77.

However, Hastings' opposition brief does not identify any evidence that would support the 5AC's allegations against McGrath. Hastings first argues that McGrath is "collaterally estopped from claiming that [he] took prompt effective action in response" to IEX, based on the Freitag decision. However, McGrath was not a defendant in Freitag, and plaintiff does not provide any basis for asserting collateral estoppel against him.

Plaintiff then asserts, in her opposition brief, that "the evidence in this case is that both defendants [Reagle] and McGrath retaliated against female employees who complained about the problem." Dkt. 681 at 17. However, the only specific example of retaliation is against Officer Freitag herself, Hastings does not allege that McGrath retaliated against her.

Hastings then alleges that McGrath "disputed the OIG report and refused to implement its recommendations." As support for that assertion, Hastings cites to three passages in McGrath's deposition testimony. See Dkt. 691, Ex. A. A look at the cited passages show that plaintiff is mischaracterizing McGrath's testimony, as McGrath stated only that certain recommendations were not necessary because they were already in effect. See Dkt. 691, Ex. A at 125:12-22 (acknowledging OIG recommendation that Pelican Bay "create a comprehensive system for tracking rule violation reports" and responding that Pelican Bay "already ha[d] that in effect."); 126:5-14 (acknowledging OIG finding that there was no process to monitor the 30-day limit for disciplinary hearings to take place, but stating that it was "inaccurate" as "there was something within the tracking process to monitor the 30-day time limit"); 146:13-148:5 (acknowledging recommendation to develop guidelines for referring IEX cases to district attorney's office, and responding that "we have always had this," and that he did not recall having any guideline preventing referral of prisoners serving life sentences without parole.).

Overall, it appears that Hastings' theory of liability as to McGrath is based solely on McGrath's status as Chief Deputy Warden and then Warden of Pelican Bay. Hastings thus seeks to impute any wrongdoing that occurred at Pelican Bay to McGrath, even in the absence of any showing that McGrath took part in the alleged wrongdoing. While Hastings

11

has shown that McGrath was aware of the problem of IEX generally (based on the Freitag litigation and the OIG report), Hastings has not shown that he was aware of and failed to prevent the specific harassment to which Hastings herself was subjected. Hastings provides no evidence showing that she made complaints to McGrath, or that McGrath was made aware of the complaints that she made to her direct supervisors. Overall, to allow Hastings to withstand summary judgment on her equal protection claim against McGrath would essentially allow respondeat superior liability under section 1983, as it would hold McGrath responsible for the conduct of his subordinates without any showing of personal involvement. Accordingly, the court GRANTS defendants' motion for summary judgment as to the section 1983 claim against McGrath.

As to defendant Reagle, plaintiff alleges in the complaint that Reagle (referred to as Schwartz) "intentionally, willfully, and without justification, allowed [Hastings] to be exposed to habitual exhibitionist masturbation," as she "knew that inmates engaged in exhibitionist masturbation, creating a sexually hostile environment." 5AC, ¶ 74. The 5AC further alleges that Reagle "deliberately refused" to address the IEX problem, "turning a blind eye to the complaints and concerns" of CDCR employees. Id., ¶ 75.

However, as with her allegations against McGrath, Hastings' opposition brief fails to provide support for the complaint's allegations against Reagle. Plaintiff first argues that Reagle, like McGrath, is collaterally estopped from claiming that she took prompt, effective remedial action in response to IEX, based on the Freitag verdict. However, in Freitag, Reagle's only basis of liability was for retaliation against Deanna Freitag in violation of her First Amendment rights, not for denial of equal protection under the Fourteenth Amendment. Thus, plaintiff cannot avoid summary judgment as to Reagle simply by pointing to the Freitag decision.

The only specific conduct of Reagle's that is mentioned in the opposition is the "initiat[ion] of multiple adverse actions against Officer Freitag after she complained" about IEX, and she required Officer Freitag to submit to a "fitness for duty" evaluation. Dkt. 681 at 17-18. Hastings does not allege that Reagle was involved in any specific deprivation of

her rights, nor does she allege that Reagle was aware of Hastings' complaints and failed to adequately respond to them. As with McGrath, Hastings is attempting to impute any wrongdoing that occurred at Pelican Bay to Reagle simply by virtue of her position as Associate Warden and then Chief Deputy Warden. Thus, for the same reasons as above (with respect to McGrath), the court GRANTS defendants' motion for summary judgment as to the section 1983 claim asserted against Reagle.

Because the court has granted defendants' motion as to the section 1983 claims asserted against McGrath and Reagle, it need not address their qualified immunity defense.

## CONCLUSION

For the reasons stated above, defendants' motion is DENIED as to the Title VII claim asserted against CDCR, and GRANTED as to the section 1983 claims asserted against McGrath and Reagle.

**IT IS SO ORDERED.**

Dated: September 16, 2014

PHYLLIS J. HAMILTON
United States District Judge